## TOM CASTLEBERRY v. STATE.

No. A-1864.   Opinion Filed March 10, 1914.

(139 Pac. 132.)

1.   **INDICTMENT AND INFORMATION—Essentials—Date of Offense—Rape.** It is not required that an indictment or information should set forth with precision some particular day as the time when the offense was committed, except where time is a material ingredient of the offense; and an indictment, charging the crime of statutory rape to have been committed "on the——day of May of A. D. 1911," is not subject to demurrer because the day of the month is left blank.

2.   **SAME—Language of Statute—Description of Offense.** The exact words of the statute defining a crime need not be used in the indictment or information charging it, but any words clearly and intelligibly setting forth the offense are sufficient.

3.   **WITNESSES—Cross-Examination by State—Bias of Witness.** The state has the right, on cross-examination, to show the nature of the relations existing between the, witness and the defendant, so far as their relations are such as would create a bias that might reasonably be supposed to affect the credibility of the witness, and this rule cannot be changed by the fact that such evidence would probably prejudice the defendant in the minds of the jury.

4.   **SAME—Impeachment—Proof of Disreputable Conduct—Admissibility.** The privilege of degrading a witness by proof of disreputable conduct, not connected with the facts on trial, is one so liable to abuse that it should be closely guarded, and allowed only on the exercise of judicial discretion of the trial court, and then only to affect the credibility of the witness.

5.   **RAPE—Defense—Previous Defilement.** In a prosecution for rape under the statute defining rape as an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, "where the female is over the age of sixteen years and under the age of eighteen and of previous chaste and virtuous character," alleged to have been committed "on the——day of May, 1911," the testimony of the prosecutrix tended to prove several acts constituting the crime charged; the first having occurred in March, and the last in May, 1911. The defendant did not request the court to require the state to elect on which act it would rely, and no election was made. Held, that the defendant, being the author of the child's defilement, is precluded from taking advantage of his previous wrong-doing to avoid the application of the statute on the theory that at the time alleged in the indictment, or at any time after the first act of sexual intercourse with the defendant, the child was not chaste, and therefore the defendant could only be convicted for the first act, which the evidence tended to prove.

6.    SAME — "Previous Chaste and Virtuous Character" — Previous
      Chaste Character. The phrase "previous chaste and virtuous char-
      acter," as used in the statute defining rape (Rev. Laws 1910,
      sec. 2414), means actual personal virtue. The allegation in an
      indictment that prosecutrix was then and there a female of
      "previous chaste character" meant the same, and was an allega-
      tion that she had never had sexual intercourse with any man. In
      other words, that she yet retained her virginity.

7.    WITNESSES—Privilege from Giving Incriminating Testimony—
      Right to Claim. In a prosecution for statutory rape, the privi-
      lege of a witness to refuse to give testimony which would tend
      to show her guilty of violation of Rev. Laws 1910, sec. 2463,
      prohibiting indecent exposure, was personal to the witness, and
      should not be taken advantage of by accused.

8.    RAPE—Statutory Rape—Sufficiency of Evidence. Evidence in
      a prosecution for statutory rape held to sustain a conviction.

          *Appeal from District Court, Tillman County;*
                   *Frank Mathews, Judge.*

     Tom Castleberry, Jr., was convicted of statutory rape, and
appeals. Affirmed.

     *J. E. Red* and *W. E. Hudson,* for plaintiff in error.

     *Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty.
Gen., for the State.

     DOYLE, J.  Plaintiff in error was tried and convicted in
the district court of Tillman county upon an indictment returned
by the grand jury on the 24th day of January, 1912. The in-
dictment charged "that on the —— day of May of A. D. 1911,
at and within said county, and within the jurisdiction of said
court, one Tom Castleberry, Jr., then and there being, did then
and there unlawfully, willfully, and feloniously commit the crime
of rape upon the person and body of one Willie Mathews, by
then and there having carnal sexual intercourse with her, the
said Willie Mathews, who was then and there a female of pre-
vious chaste character, and under the age of eighteen years,
and the said Willie Mathews then and there not being the wife
of the said defendant, Tom Castleberry, Jr., contrary to," etc.
On the 14th day of June, 1912, in accordance with the verdict
of the jury, the court sentenced the defendant to imprisonment
in the penitentiary for the term of five years. To reverse the

judgment an appeal was taken by filing in this court, on November 29, 1912, a petition in error with case-made.

The first assignment of error is in the overruling of the demurrer to the indictment. It is contended that the indictment is fatally defective in not alleging the exact day of the month of May that the offense was committed.

Our Code provides (section 5742, Rev. Laws 1910):

"The precise time at which the offense was committed need not be stated in the indictment or information; but it may be alleged to have been committed at any time before the finding thereof, except where the time is a material ingredient in the offense."

By section 5746, Rev. Laws 1910, it is also provided:

"The indictment or information is sufficient if it can be understood therefrom: * * * Fifth: That the offense was committed at some time prior to the time of filing the indictment or information. Sixth: That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended. Seventh: That the act or omission charged as the offense, is stated with such a degree of certainty, as to enable the court to pronounce judgment upon a conviction according to the right of the case."

At the common law an allegation of the exact date of the offense was indispensable and authorities may be found holding that it is necessary to allege a particular date on which the offense was committed. However, under the foregoing provisions of our Code, it is unnecessary to allege the exact date of the offense, except in cases where time is a material ingredient of the offense charged. It is sufficient if it shall clearly appear that the offense charged was committed at some time prior to the finding of the indictment, and within the statute of limitations. However, as a matter of good pleading, even where time is not a material ingredient, it is better that an indictment or information should allege a particular day as the time when the offense was committed. As to time, all that is necessary to be proved in any case like this is that the offense charged was committed while the female was under the age of eighteen years. Other-

wise time is not a material ingredient of the offense. Therefore the contention is not well taken.

It is also claimed that the indictment is defective in that it is not alleged, in the words of the statute, that Willie Mathews was a female of "previous chaste and virtuous character." The indictment alleges that she was a female of "previous chaste character." We think that the language used is sufficient. It is well settled that the exact words of a statute defining a crime need not be used in an indictment or information charging it, but any words clearly and intelligibly setting forth the offense are sufficient.

Our Code provides (section 5747, Rev. Laws 1910):

"No indictment or information is insufficient, or can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

The phrase "previous chaste and virtuous character," as used in the statute defining rape (section 2414, Rev. Laws 1910), means actual personal virtue. The allegation in the information that she was then and there a female of "previous chaste character" means the same, and is an allegation that the prosecutrix had never had sexual intercourse with any man. In other words that she yet retained her virginity. Our conclusion is that the demurrer was properly overruled.

The next assignment is that the court erred in admitting the testimony of Ruth Brady, upon her cross-examination, and in permitting the state to introduce in evidence a post-card photograph of Ruth Brady and the defendant upon the cross-examination of said witness. Ruth, as a witness for the defendant, had testified that in February, 1912, she went to her home and had a conversation with the prosecutrix, and asked her who she thought her baby boy favored, and the prosecutrix said "that she didn't know, but that she had a pretty good idea"; that she then asked her who was the father of her child, and that she said "she didn't know who the father of her child was." On cross-examination she stated that the defendant was her sweet-

heart. The state produced a photograph taken by Jack Kendrick, another witness for the defendant, and extended it to the witness; her further examination, taken from the transcript, being as follows:

"Q. Whose picture is that? A. It's ours; Tom and me. Q. Yourself and Tom? A. Yes; don't it look like us? Q. This shows Tom and you, and Tom has got his hands upon your leg, and your dress pulled up, and his hands up there on your knee, hasn't he? (Objection that the same is not proper cross-examination. Overruled and exception allowed.) Q. He has got his hands up there on your legs? A. Yes, sir. Q. You was out riding with Tom and permitted him to do you that way? A. Yes, sir. Q. That is a true picture of you and Tom? A. Yes, sir."

She further stated that the picture was taken by Jack Kendrick about three months before; that she left Hobart, her home, with the defendant, and went to see the prosecutrix at Davidson, because she just wanted to see if the baby favored Tom. The argument is made that:

"A person having their picture taken in possibly an immodest way, as this picture represents, could have nothing to do with the truth .or untruthfulness of what such person may testify to upon the witness stand upon a matter disconnected with such act. And the admission of such testimony, and the exhibit of said indecent picture as evidence, as was allowed in this case, answered no fairly useful purpose on the trial. It only tended to embarrass the witness by exposing an act done by her in the infirmity of human nature, amid the temptations that beset life, and the obvious purpose and the undoubted effect of such course of examination in this case were to degrade and injure the witness in the estimation of the jury to injuriously affect their verdict against the defendant."

The evidence, if inadmissible, was, beyond doubt, highly prejudicial to the defendant. On the other hand, the evidence of the witness Ruth Brady, if believed, was very damaging to the state.

It is well settled that in a criminal case a witness on cross-examination may be questioned as to his relations and feelings of friendliness or hostility towards the defendant.

In Underhill on Crim. Ev., sec. 221, it is said:

"Questions put to the witness for the purpose of ascertaining his relations, business, social, or otherwise, with the accused and his state of mind, whether hostile or friendly towards him, are unobjectionable."

In *Holly v. Commonwealth* (Ky.) 36 S. W. 532, a woman was introduced as a witness for the defendant. It was held that it was not error, for the purpose of showing her interest and probable bias, to allow her to testify on cross-examination that she and the defendant had been living together without being married.

In *Smith v. State,* 143 Ind. 685, 42 N. E. 913, it was held that the state, on the cross-examination of a female who was a witness for the accused, could show her relations with him, as showing bias in his favor on the part of the witness.

In *Martin v. State,* 125 Ala. 64, 28 South. 92, it was held that a witness for the defendant could be asked on cross-examination if she did not sustain illicit relations with the defendant.

In *Sexton v. State,* 48 Tex. Cr. R. 497, 88 S. W. 348, a witness was permitted to be asked on cross-examination if she had not lived in adultery with defendant for five or six years. She answered in the affirmative. This was held to be proper cross-examination. The court says:

"It was relevant for the purpose of showing her bias and friendship and close relationship to the appellant, and her interest in testifying in his behalf, and, consequently, as touching her credibility."

In *State v. McGahey,* 3 N. D. 293, 55 N. W. 753, a witness for the defendant, over his objection, was permitted to be cross-examined at length as to her relations to and criminal intercourse with the defendant. The court says:

"The able counsel does not contend that it was improper to ask the witness on cross-examination as to her criminal relations with men generally as affecting her credit, but urges that such object could be equally well attained without specifically naming McGahey, and that the necessary effect of so naming him must have been to prejudice the jury against him. Admitting counsel's conclusion, we are still of opinion that the line of cross-examination was proper. The state has the right to show the re-

lations existing between the witness and the party at whose instance, and presumably in whose interest, she was testifying. It had the right to expose to the jury every motive and desire of the witness that might naturally and reasonably be supposed to produce that bias that would affect the character of her testimony."

The doctrine that a witness may be cross-examined as to matters going to credibility may well be regarded as an exception to the rule that cross-examination is to be confined to matters touched on in the examination in chief, and the limits within which either party may cross-examine upon matters not strictly relevant, but which affect the credibility of the witness, is largely within the discretion of the trial court, but the privilege of degrading a witness by proof of disreputable conduct, not connected with the facts on trial, is one so liable to abuse that it should be closely guarded and allowed only upon the exercise of sound judicial discretion, and then only to affect the credibility of the witness.

The witness, Ruth Brady, testified on her cross-examination that she was the sweetheart of the defendant. Here we have a very powerful motive for testimony in his behalf. She identified and admitted the photograph which shows that witness, in the presence of a third person, permitted the defendant to take indecent liberties with her person. We think the entire evidence upon the cross-examination, including the photograph, was properly admitted, as showing the nature of the relations existing between the witness and the defendant, and that their relations were such as would create a bias on the part of the witness that might reasonably be supposed to affect her credibility, and the fact that such evidence would probably prejudice the defendant in the minds of the jury did not affect its admissibility.

It is also contended that the evidence as to the photograph was inadmissible, because it compelled said witness Ruth Brady to give evidence which tended to incriminate her, in that it tended to show that witness was guilty of a violation of the criminal laws of the state prohibiting indecent exposure. Section 2463, Rev. Laws 1910. It is elementary law, supported by

all the authorities, that the privilege to refuse to answer incriminating questions is one personal to the witness, and an objection to a question for this reason should come from the witness, not the party. In Underhill on Crim. Ev., par. 247, p. 449, the rule is thus stated:

"The right to refuse to answer incriminating questions is personal to the witness. To preserve his right he must himself object. If he wishes to answer, he may do so, and neither the prosecution nor the accused has a right to object."

There is no merit in the contention. The privilege was that of the witness, and it is not a matter of which the defendant can complain.

Finally, under several assignments it is contended that the verdict is contrary to the evidence. The prosecutrix testified: That she was born on the 30th day of August, 1894, and had lived with her parents at Davidson, in Tillman county, for about three years, and the defendant had gone with her off and on for about three years; that during the months of March, April, and May, 1911, he was with her about three times a week. That he promised to marry her, and she permitted him to have sexual intercourse with her, the first time in March, 1911, while they were going to her home from church. That this conduct was repeated several times, always on the way from church to her home. The last act occurred May 25, 1911. As a result she became pregnant. That she informed the defendant, and he said, "I will fix that up all right in a few days," and that they would go to Frederick, the county seat and get married. That soon thereafter he left the state. That her child was born January 28, 1912. That she never had intercourse with any man other than the defendant; that she consented to have intercourse with the defendant because he promised to marry her, and she loved him; that she was unmarried, and not the wife of the defendant. There are in evidence many facts and circumstances of a corroborative character which materially strengthen the evidence of the prosecutrix as to the principal fact about which she testifies. We have given the evidence careful consideration, and our conclusion is that the evidence is ample to sustain the verdict,

and that the controversy of fact was peculiarly one for the jury to determine.

It is contended, however, that because the prosecutrix testified that the defendant had sexual relations with her prior to "the —— day of May, 1911, the time alleged in the indictment; that she was not on the —— day of May, 1911, or at any time after the first act of sexual intercourse with the defendant, a female of previous chaste and virtuous character; therefore he cannot be convicted of any subsequent act, and counsel cite the case of *State v. Dacke,* 59 Wash. 238, 109 Pac. 1050, 30 L. R. A. (N. S.) 173. This contention presents the question to this court for the first time, and it becomes necessary therefore to determine whether a man may gratify his lust and passion by persuading a chaste child to permit him to have sexual intercourse with her, and afterwards repeat the act, and then, in a prosecution for statutory rape, to take advantage of his previous defilement of the child to avoid the application of the statute. The testimony of the prosecutrix tended to prove several acts constituting the crime charged. The defendant did not move or request the court to require the state to elect on which act it would rely. The court properly instructed the jury, in effect, that if they found from the evidence beyond a reasonable doubt that the defendant, within the county and state, on the —— day of May, 1911, or at any time within three years prior to the finding of the indictment, did have sexual intercourse with the prosecutrix, and that she was at the time under eighteen years of age and of previous chaste and virtuous character, then they should find the defendant guilty of rape in the second degree. Our Code provides that an indictment or information must charge but one offense. Rev. Laws 1910, sec. 5741.

It is a general rule that when the law permits but one offense to be set out in the accusation, the state will be compelled to choose the transactions on which it will ask a verdict. 1 Bish. New Crim. Proc., par. 459.

In this class of cases, however, we think the question of election is properly a matter within the judicial discretion of the trial court. We think the contention is not well taken. Such is not

the law, and such a doctrine is without support in the principles of criminal jurisprudence.

In our opinion, the defendant, being the author of the child's defilement, is precluded from taking advantage of his previous wrongdoing to avoid the application of the statute.

In the case of *State v. Sargent,* 62 Wash. 692, 114 Pac. 868, 35 L. R. A. (N. S.) 173, Crow, J., delivering the opinion of the court and discussing the question here presented, said:

"If appellant's contention is to be sustained, to the effect that he cannot be convicted for any subsequent act committed within the same calendar month, it would then be impossible to convict any defendant of the commission of this crime upon the person of a female child over fifteen and less than eighteen years of age, unless the state relied upon the first act only, and was able to produce other evidence to corroborate the testimony of the prosecuting witness as to that particular act. Such a holding would practically remove that protection with which the statute seeks to clothe female children of chaste character between fifteen and eighteen years of age. We are not prepared to thus extend the doctrine of the Dacke case, and in effect annul the statute itself."

The object of the statute is to protect the chastity and virtue of the girlhood of our state from the evil machinations of vicious-minded persons of depraved nature and morals. The records of this court disclose that in this class of cases the defilement of a child is usually accompanied by a succession of illicit acts, and the punishment for this infamous crime against society and the state ought not to be made to hinge upon a mere technical application of the rules of pleading, and evidence, when the only question is which one of such illicit acts was the verdict of guilty based on.

Having considered the questions presented, our conclusion is that the defendant had a fair trial and was properly convicted.

The judgment of conviction is therefore affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.