JOHN HUNTER, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed January 25, 1923.

Petition for Rehearing Denied February 3, 1923.

1. As a general rule the precise date laid in an indictment as the time of the commission of an offense need not be proved, and there will be no variance if another day be proved, provided it be prior to the finding of the indictment and within the statute of limitations.

2. Except in those cases where the allegation and proof of the precise time are material, a different date from that alleged in an indictment before the return of the indictment and within the statute of limitations may be proved at the trial as the date upon which the alleged crime was committed.

3. Upon a charge of having unlawfully had sexual intercourse with an unmarried female under the age of eighteen years, of previous chaste character, the allegation of the precise date of the act of unlawful intercourse charged is immaterial, and proof beyond all reasonable doubt that such act was unlawful, that it occurred within the jurisdiction of the court before

the return of the indictment and within the statute of limitations and that such unmarried female was, at the time of the commission of the specific act, under the age of eighteen years and of previous chaste character, is sufficient to uphold a judgment of conviction.

4. In so far as the case of Bynum v. State, 76 Fla. 618, 80 South. Rep. 572, is in conflict with the views herein expressed, it is overruled.

A Writ of Error to the Circuit Court within and for Jackson County; C. L. Wilson, Judge.

Affirmed.

W. E. B. Smith, for Plaintiff in Error;

Rivers Buford, Attorney General, and J. B. Gaines, Assistant, for the State.

WEST, J.—The defendant, John Hunter, plaintiff in error in this court, was indicted by a grand jury in Jackson County charged with having unlawfully had sexual intercourse with Ruby King, an unmarried female under the age of eighteen years of previous chaste character. Upon a trial there was a verdict of conviction. To review the judgment imposing sentence writ of error was taken from this court.

The only point made by counsel for plaintiff in error and submitted for determination on this writ of error is that it was shown by the evidence introduced on behalf of the State that the defendant did, upon several occasions prior to the date alleged in the indictment, have intercourse with the unmarried female named, and it is contended that because of this proof she was not, at the time of the alleged

offense, of previous chaste character, and therefore the offense charged is not proved. There is no merit in this contention. The established general rule is that except in those cases where the allegation of the precise time is material a different date from that alleged in the indictment before the date of the return of the indictment and within the statute of limitations may be proven at the trial as the date upon which the crime was committed. Straughter v. State, 83 Fla. 683, 92 South. Rep 569; Whatley v. State, 46 Fla. 145, 35 South. Rep. 80; Chandler v. State, 25 Fla. 728, 6 South. Rep. 768. Every proven instance of intercourse between the defendant and the female person named was in Jackson County and was prior to the return of the indictment and within the statute of limitations. At the time of the first act of unlawful intercourse the female named was of previous chaste character, if the statement made by her that she had never previous to that time had sexual intercourse with any one else, which was not disputed, was true. There is no reason why this class of cases should be withdrawn from the general rule stated. The defendant, upon a charge of this kind, should not be permitted to assert that the female person named did not upon the date alleged possess the virtue of chastity because he had upon a previous date, prior to the return of the indictment and within the statute of limitations, robbed her of it, and upon the theory demand that he be discharged by a court whose function it is to administer justice.

In so far as the case of Bynum v. State, 76 Fla. 618, 80 South. Rep. 572, is in conflict with the views herein expressed, it is overruled.

The judgment is affirmed.

WHITFIELD AND ELLIS, J. J., concur.

TAYLOR, C. J., AND BROWNE, J., dissent.

WHITFIELD, J.—Concurring.

The indictment herein charges "that John Hunter of the County of Jackson and the State of Florida, on the 15th day of September in the year of our Lord one thousand nine hundred and twenty-one in the county and State aforesaid, did unlawfully, feloniously, have sexual intercourse with and carnally know Ruby King, an unmarried female, she the said Ruby King being at the time of such sexual intercourse and carnal knowledge of her by the said John King under the age of eighteen years, and of previous chaste character." The allegation is that Ruby King was "at the time of such sexual intercourse and carnal knowledge * of previous chaste character," not that "on the 15th of Sept. 1920, Ruby King was of chaste character." The chastity of the female has no reference to a particular time, but to a particular carnal act. 1 Wharton Cr. Law (10th ed.) Sec. 106, page 302; 22 Cyc. 314. It is not contended that under a statute. making it an offense for a person to have carnal intercourse with an unmarried female under eighteen years of age the time alleged in the indictment of the date of the carnal act is material and must be proven as alleged, but the insistence is that the addition of the words "of previous chaste character" to the statutory definition, changes the rule as to the alleging and proving the date of the offense, and makes the allegation of the precise time material to be proven as alleged. The authorities do not sustain this contention.

In defining the offense the prior statute required the female person to be (1) unmarried, and (2) under the age of eighteen years, while the present statute merely adds another condition, (3) of previous chaste character. This

addition to the definition of the offense does not make time of the essence of the offense any more than the elements of being unmarried and under 18 years of age did under the former statute, therefore the addition of the words "of previous chaste character" does not change the rule shown herein to be established in this and other States as to the allegation and proof of the time of the commission of an offense. Alexander v. State, 40 Fla. 213, 23 South. Rep. 536; Weinert v. State, 35 Fla. 229, 17 South. Rep. 570; Warrace v. State, 27 Fla. 362, 8 South. Rep. 748; Chandler v. State, 25 Fla. 728, 6 South. Rep. 768; Straughter v. State, 83 Fla. 683, 92 South. Rep. 569; Throp v. Smith, 64 Fla. 154, 59 South. Rep. 193; 16 C. J. 529; 14 R. C. L. 180; 1 Bishop's New Crim. Proc. §400; 1 Wharton's Crim. Proc. (10th ed.) sec. 103, page 300. Time is material when the offense may be committed only on certain days, where written instruments are pleaded, where the statute is not in force, or is a bar, &c. See Dacy v. State, 17 Ga. 439, 442; 20 Fla. 381; 64 Fla. 134; 27 Fla. 362; 56 Fla. 107.

In Bynum v. State, 76 Fla. 618, 80 South. Rep. 572, the writer concurred in the majority opinion upon the theory that the allegation of previous chastity was a part of the definition of the statutory offense and should be proven as alleged, and also because the evidence as to previous chastity was quite unsatisfactory. See State v. Dacke, 59 Wash. 238, 109 Pac. Rep. 1050, 30 L. R. A. (N. S.) 173, and cases cited; Bailey v. State, 57 Neb. 706, 78 N. W. Rep. 284, 73 Am. St. Rep. 540; Rogers v. State, 111 Miss. 781, 72 South. Rep. 198; People v. Nelson, 153 N. Y. 90, 46 N. E. Rep. 1040, 60 Am. St. Rep. 592; State v. McMahon, 234 Mo. 611, 137 S. W. Rep. 872; Carpenter v. People, 8 Barb. (N. Y.) 603; State v. Foster, — Mo. —, 225 S. W. Rep. 671.

In the Dacke and Rodgers cases, where the convictions were reversed, the initial act of carnal intercourse by which the chastity of the female was destroyed, was committed in another county than the one in which the defendant was indicted. In the Bailey case the initial act was committed in another State. In the Nelson and Mc-Mahon and Carpenter and Foster cases the initial act was committed more than the statutory period of limitation before the indictment was found. In Cleninger v. State, — Tex. Cr. —, 237 S. W. Rep. 288, the court confined the prosecution to the second act of carnal intercourse. In People v. Bessler, 131 Mich. 390, 91 N. W. Rep. 639, a date subsequent to the first carnal act was elected by the State.

The Florida statute which took effect November 29, 1918, provides "that from and after the passage and approval of this Act any male person who has unlawful carnal intercourse with any unmarried female person of previous chaste character, who is at the time of such intercourse under the age of eighteen years shall be punished by imprisonment in the State penitentiary not more than ten years, or by fine not exceeding Two Thousand Dollars."

The purpose of the statute is to punish a male person for the act of carnal intercourse with an unmarried female person of previous chaste character, where the female person was under eighteen years of age when an act was committed. The statute makes the previous chaste character of the female relate to the act of carnal intercourse for which punishment is prescribed, not to the time stated in the indictment. See Carpenter v. People, *supra.*

It is well settled that while indictments for crime must generally state some time or date upon which the offense was committed, which date must be prior to the finding of the indictment and within the period when the offense

would be barred by limitations, yet such time need not be stated accurately, except in those cases where the allegation of the precise time is material; and a different time from the one alleged may be proved at the trial, and it will be sufficient to sustain a conviction if such proof shows the offense to have been committed at any time prior to the indictment and within the bar of the statute, except in the cases where the exact time enters into the nature of the offense. Alexander v. State, 40 Fla. 213, 23 South. Rep. 536; Joyce on Indictments, sec. 311; 118 Fed. 689; 170 U. S. 606, 612.

As a general rule the precise date laid in the indictment as the time of the commission of an offense need not be proved, and there will be no variance if another day be proved, provided it be prior to the finding of the indictment and within the statute of limitations. But every indictment must on its fact charge the commission of a criminal offense, including matters necessary to enable the court to impose the proper sentence in cases of conviction, and in determining its sufficiency in these respects the date alleged must be taken as the true date. Whatley v. State, 46 Fla. 145, 35 South. Rep. 80; Rouse v. State, 44 Fla. 148, 32 South. Rep. 784; Thorp v. Smith, 64 Fla. 154, 59 South. Rep. 193; Morgan v. State, 51 Fla. 76, 40 South. Rep. 828; Underhill on Crim. Ev. sec. 32, page 55.

"Though the allegation of time is important, it is in no case necessary to prove the precise day or even year laid down in the indictment, except where a day is averred by way of describing a written instrument, record, &c., or where time enters into the nature of the offence.

But where the date of a particular fact is necessary to ascertain, with precision, the offense charged, it must be proved as alleged. Consequently, several exceptions have

been made to the foregoing rule, namely: that it will not be necessary to prove precisely the time as laid. 1st. In all cases where written instruments are pleaded, the date, if stated, must correspond with the date of the instrument when produced in evidence on the trial. (Com. vs. Lyon, 2 Camp. 307, n. Freeman vs. Jacob, 4 Campb. 249.) 2d. As deeds may be pleaded, either according to the date which they bear, or to the day on which they are delivered —if a deed produced in evidence bear date on a different day from that stated in the pleading, the party producing it must prove that it was, in fact, delivered on the day alleged in the pleading. 3dly. If any time stated in the pleading is to be proved by matter of record, it must be correctly stated. (1 T. R. 656. 4 Id. 590. 11 East 508. 1 H. B. L. 49. 2 Saund. 291, b.) The slightest variance in any of these respects, will be fatal in *felonies*. In *misdemeanors*, in some cases they are amendable at the trial. 4thly. When the precise date of any fact is necessary to ascertain and determine, with precision, the offence charged or the matter alleged, in excuse or justification, any variance between the pleading and evidence will be fatal. And *lastly*. Where time is of the essence of the offence, as in burglary and the like, the offence must be proved to have been committed in the night-time, although the day on which the offence is charged to have been committed is immaterial. In murder, also, the death must be proved to have taken place within a year and a day from the time the stroke was given. (2 Hawkin's Ch. 23, § 90.)" Dacy v. State, 17 Ga. 439, text 442.

In this case the prescribed punishment may be imposed for a commission of the stated carnal act at any time after the statute became effective if the prescribed carnal act was committed with a female of the stated class within the jurisdiction of the court, prior to the filing of

the indictment and within the statutory limitation of two years theretofore, even though the date on which the offense is alleged in the indictment to have been committed is subsequent to the date when the designated carnal act was in fact done. The indictment under the law has reference to the unlawful carnal act when it was in fact committed, though the date of the commission of the act as alleged in the indictment is not the true date. And where it is proven that, while the statute punishing the act was in force and prior to the filing of the indictment and within the limitation of the time fixed by the statute for prosecutions, though it might not be on the day alleged in the indictment, the defendant male person within the jurisdiction of the court had carnal intercourse with the named female person who at the time of such intercourse was unmarried and under 18 years of age and of previous chaste character, such proof shows a commission of the offence intended to be defined and punished by the statute. See Alexander v. State, *supra;* Chandler v. State, 25 Fla. 728, 6 South. Rep. 768; Straughter v. State, 83 Fla. 683, 92 South. Rep. 569. See also Castleberry v. State, 10 Okla. Cr. 504, 139 Pac. Rep. 132; Sec. 5011 Rev. Gen. Stats. 1920; 2 Bishop New Cr. Proc. § 400; State v. Deitrick, 51 Iowa 467, 1 N. W. Rep. 732; 1 Whart. Cr. Ev. (10th ed.) §§ 103, 106.

Where it is duly alleged and proven that while the statute defining the offense was in force a named male person, within the jurisdiction of the court, and within two years prior to the due presentment of the indictment, had carnal intercourse with a designated unmarried female person of previous chaste character, the female person being at the time of such intercourse under the age of eighteen years, the offense defined and made punishable by the statute is shown; and substantive or incidental proof

of acts of unlawful sexual intercuorse between the same parties subsequent to the commission of the designated offense, does not affect the operation of the statute to penalize the specific offense alleged which is shown to have been committed within the period for which punishment under the statute may be imposed. See State v. Henderson, 243 Mo. 503, 147 S. W. Rep. 480. The consideration should be confined to the first act.    See State v. Schenck, 238 Mo. 429, 458, 142 S. W. Rep. 263; Branham v. State, — Okla. Cr. —, 182 Pac. Rep. 525; State v. Workman, 66 Wash. 292, 119 Pac. Rep. 751; Nabower v. State, 105 Neb. 848, 182 N. W. Rep. 493; 22 R. C. L. 1190.

In this case the statute defining the offense, Chapter 7732, Acts of 1918, became effective November 29, 1918, and it appears that the first act of carnal intercourse was in June, 1921.    The date stated in the indictment is September 15, 1921.    The indictment was presented in open court on January 11, 1922.    The first and last and intermediate acts of carnal intercourse testified to were all committed within the jurisdiction of the court and after the statute was in force and within two years, the statutory limitation for prosecutions, prior to the filing of the indictment.    The State did not elect to prosecute for a carnal act committed after the first carnal act.    There is evidence that at the time of the first act of carnal intercourse the female person was under 18 years of age, unmarried and of previous chaste character.    The finding that the offense defined by the statute was committed has support in the testimony, and the verdict was sustained by the trial judge in denying a motion for new trial.    See State v. Sargent, 62 Wash. 692, 114 Pac. Rep. 868, 35 L. R. A. (N. S.) 173; 22 R. C. L. 1190; Castleberry v. State, 10 Okla. Cr. 504, 139 Pac. Rep. 132.

In so far as the case of Bynum v. State, 76 Fla. 618, 80 South. Rep. 572, conflicts with the views here expressed it should be disapproved by the decision in this case. See Christopher v. Mungen, 61 Fla. 513, 55 South. Rep. 273; Abraham v. Baldwin, 52 Fla. 151, 42 South. Rep. 591; J. T. & K. W. Ry. Co. v. Lockwood, 33 Fla. 573.

As to *stare decisis*, see 1 Bishop's New Crim. Law, § 96; City of Kalamazoo v. Crawford, 154 Mich. 58, 117 N. W. Rep. 572, 16 Ann. Cas. 110; State v. Williams, 13 S. C. 546; 7 R. C. L. 1006, 1008; Quaker Realty Co. v. Labasse, 131 La. 996, 60 South. Rep. 661, Ann. Cas. 1914A, 1073; Truxton v. Fait & Slagel Co., 1 Pennw. (Del.) 483, 42 Atl. Rep. 431, 73 Am. St. Rep. 81, 103, and cases cited; Prall v. Burchhartt, 299 Ill. 19, 132, N. E. Rep. 280, 18 A. L. R. 992; Garland v. State of Washington, 232 U. S. 642, 34 Sup. Ct. Rep. 456; Hertz v. Woodman, 218 U. S. 205, 30 Sup. Ct. Rep. 621; Frank v. Magum, 237 U. S. 309, 35 Sup. Ct. Rep. 582; Lioux Remedy Co. v. Cope, 235 U. S. 197, 35 Sup. Ct. Rep. 57; Western Union Tel. Co. v. Wilson, 32 Fla. 527, 14 South. Rep. 1; 15 C. J. 938; Lanier v. State, 57 Miss. 102; 22 L. R. A. 434.

BROWNE, J.—Dissenting.

The opinion in this case is in direct conflict with the law of this State as announced by this court in the case of Bynum v. State, 76 Fla. 618, 80 South. Rep. 572.

If the Bynum case is to be overruled and the doctrine of *stare decisis* repudiated by this court, then we should say so unequivocally. If, however, the salutary effect of uniformity, certainty and stability in the law is to be preserved, we should adhere to the rule laid down in the Bynum case, and let it be known that our decisions are bind-

ing, not only upon the public, but upon the members of this court.

Upon this point I cite the following: ''The doctrine is frequently termed the rule of *stare decisis;* and is, in general, to the effect that where a point has been once settled by decision it forms a precedent which is not afterwards to be departed from. The rule *stare decisis* has for its object the salutary effect of uniformity, certainty, and stability in the law; and, stated in simple form and considered in relation to its effect upon private affairs, is really nothing more than the application of the doctrine of estoppel to court decisions. It finds its support in the sound principle that when courts have announced, for the guidance and government of individuals and the public, certain controlling principles of law, or have given a construction to statutes upon which individuals and the public have relied in making contracts, they ought not, after these constructions have been published, to withdraw or overrule them, thereby disturbing contract rights that had been entered into, and property rights that had been acquired, upon the faith and credit that the principle announced or the construction adopted in the opinion was the law of the land. While, perhaps, it is more important as to far-reaching judicial principles that the court should be right, in the light of higher civilization, later and more careful examination of authorities, wider and more thorough discussion and more mature reflection upon the policy of the law, than merely in harmony with previous decisions, it nevertheless is vital that there be stability in the courts in adhering to decisions deliberately made after ample consideration. As to many matters of frequent occurrence, the establishment of some certain guide is of more significance than the precise form of the rule, and substantial justice may often be better promoted by ad-

hering to an erroneous decision than by overthrowing a rule once established.''   7 R. C. L. pp. 1000-1001.

I quote again from the same authority: ''Decisions construing the Constitution or Acts of the legislature should be followed, in the absence of cogent reasons to the contrary, inasmuch as it is of the utmost importance that the organic and statute law be of certain meaning and fixed interpretation. And it has been said that the court of last resort of a State will not overrule one of its prior decisions construing a statute where the legislature has several occasions since such decision without modifying or amending the statute, as it may be claimed justly that the legislature has acquiesced in the decision, and therefore a fair case is presented for the application of the doctrine of *Stare decisis*. There are, however, decisions to the effect that in matters involving the interpretation of the Constitution it is usual and proper to give less force to the doctrine of *stare decisis* than in other cases. Where a court is asked to extend the scope of a criminal statute beyond that given to it by a former construction, such a request has been denied on the ground that the overturning or extension of an established doctrine of the criminal law would be in the nature of ex post facto judicial legislation. It would have the effect of making things unlawful as a result of the court's action which formerly were within the law.''   p. 1002.

Even where the personnel of the court has changed, the rule of *stare decisis* is regarded as binding upon the new members of the court.

''Parties should not be encouraged to seek re-examination of determined principles and to speculate on a fluctuation of the law with every change in the expounders of it.'' 7 R. C. L. 1000.

In the case under consideration, the personnel of the court is the same as when the Bynum case was decided, and it is the law of this State binding alike upon the public, the inferior courts, and upon ourselves.

The only result that can flow from ignoring the doctrine of *stare decisis* in this instance, will be to foster loose and careless pleading by state attorneys. Such practice should not be encouraged by the courts, particularly when in order to do so, we must set aside so salutary a rule as that of *stare decisis*. Setting aside the doctrine will encourage the evil which it is intended to prevent, and will open the flood-gates of litigation to all who desire to speculate on the chance of having the court change the law in each new case where the question arises; particularly where the decision is by a bare majority.

The evils that will result from changing the doctrine are greater than any evil that can possibly flow from adhering to it. The only effect of abandoning the law laid down in the Bynum case will be to encourage and permit lax pleading by state attorneys.

The particular offense with which the defendant was charged in the instant case is one involving *an act on his part,* and the *physical condition* of the other party at the time that the indictment alleges the act took place. It is a very simple matter in cases of this character for the state attorney to ascertain before preparing the indictment, the actual facts and properly allege them.

I do not think that the necessity for permitting state attorneys to prepare indictments and informations carelessly is sufficient reason for setting aside the rule of *stare decisis.*

The Attorney General in his brief says: "If the rule of principle applied to *Bynum v. State, supra,* is law in this State, the assignments of error in the instant case are well taken, the defendant's contention is sound, and the judgment against him should be reversed."

Apart from the question of disregarding the doctrine of *stare decisis,* I consider the law as stated in the Bynum case, *supra,* as absolutely sound.

The distinction between the allegation of *the date when an act is committed,* and the allegation of the *condition of a person other than the defendant, at the time the act was committed* seems not to be made by the majority of the court. The allegation in the indictment of a material fact, about which there is a fatal variance, is, that "on the 15th of Sept. 1921, Ruby King was of chaste character." She testified that she was not, and that she had indulged in sexual intercourse with the defendant "about twenty-five times" before that date. This I regard as a fatal variance between the allegation and the proof of the material fact of her physical condition on the date alleged in the indictment.

The law as stated in the Bynum case, *supra,* is supported by respectable authority.

The rule is that where a criminal act consists of separate and distinct elements, as this does, the existence of all of the necessary elements must be alleged and proved as alleged.

"The clause 'of previous chaste character' does not mean purity of mind, nor purity of heart, but merely purity of body i. e., that the prosecutrix has never sustained illicit relations with *anyone* prior to the alleged offense with the defendant." (The italics are mine.) State v.

Holter, 32 S. Dak 43, 142 N. W. Rep. 657, 46 L. R. A. (N. S.) 376.

The testimony of the prosecutrix is that in a period of about three months, she had voluntarily indulged in sexual intercourse with the defendant "about twenty-five times." Virgin modesty, no doubt, caused her to confine the testimony of her illicit activities, to so few occasions, but they were frequent enough to bring her within the class of whom the court in State v. Patterson, 88 Mo. 88, said, "I cannot believe that legislative protection—intended only for the *pure and innocent* in heart, was designed to be extended to those who, being vile and impure, have *nothing left for the law to guard.*"

In that case it was held that if the prosecutrix had had sexual intercourse with the defendant prior to the time alleged in the indictment it was competent evidence to go to the jury on the question of her "previous chastity." The court said, "Any evidence, therefore, which shows, or materially tends to show that there was, at the time of the alleged offense is charged to have been committed, *no chastity,* in the given case cannot be other wise than competent and revelent. How better can you establish this fact than by specific acts of unchastity? Is it not the highest and best evidence of the fact in issue, and will not one of the most hackneyed rules of evidence apply as well here as in innumerable other cases of daily occurrence? Evidence of prior specific acts of unchastity with the *defendant* himself is now universally received, as well in cases of seduction as in cases of rape. What for? To show that in the latter class of cases there was less likelihood of absence of consent; and that in the former, in consequence of a prior act of the defendant, there was no chastity left to seduce. Can it be material by whom the prior act be performed,

whether by the defendant, or whether by any one else? *Is it any the less seduction because Jones is the seducer instead of the defendant Smith?*. If in any civil or criminal trial where Smith is defendant, I offer evidence showing a prior specific act of Jones, which rendered the subsequent act of defendant, Smith, morally as well as physically *impossible,* will any court in christendom reject the proffered evidence?''

There are some courts that hold that prior acts of carnal intercourse with the same person do not make the prosecutrix unchaste, if she had reformed after the prior acts, and subsequent to her reformation had again indulged in sexual intercourse with the same person.

However I may question this rule, so far as reformation restoring the precious jewel, which when once lost is gone forever, the courts that have adopted it sustain the doctrine of the Bynum case.

In the case of State v. Moore, 79 Iowa 494, 43 N. W. Rep. 273, the court said: ''If the jury believe from the evidence that in 1884 defendant and the prosecutrix had illicit tercourse, and that their relations were absolutely broken off, and that she reformed, and, by her conduct, showed herself to your satisfaction to be a woman of chaste character, and that the defendant afterwards, by virtue of a promise to marry her, and, through the influence and control he had unduly acquired over her, succeeded in overcoming her virtue and had illicit sexual intercourse with her, and begot her with child, then he is guilty of seduction at that time, even though he had a year or so before had similar connection with her.''

In People v. Clark, 33 Mich. 112, the court said: ''We do not wish to be understood as saying that, even as between the same parties, there could not be a second or

even third act of seduction; but where the subsequent alleged acts follow the first so closely, they destroy the presumption of chastity which would otherwise prevail, and there should be a clear and satisfactory proof that the complainant had in truth and fact reformed, otherwise there could be no seduction. The object of this statute was not to punish illicit cohabitation. Its object was to punish the seducer, who, by his arts and persuasions, prevails over the chastity of an unmarried woman, and who thus draws her aside from the path of duty and rectitude she was pursuing. If, however, she had already fallen, and was not at the time pursuing this path, but willingly submitted to his embraces as opportunity offered, the mere fact of a promise made at the time would not make the act seduction.''

In the case of People v. Clark, *supra*, the question presented here, the chastity of the prosecutrix on the date set out in the indictment, was before the court for decision. It was held: ''Where it appears that illicit intercourse was had between the parties as opportunity offered, at short intervals, to warrant a conviction of seduction for the second or third or latter act there should be clear and satisfactory proof of reformation.''

Although the statutes passed upon in these cases punished seduction, some under promise of marriage, others without such promise, the principle involved is the same. This was held in Rex v. Moon, an English case reported in 1 K. B. 818. In that case the court said: ''The whole case turns upon the meaning of the word 'seduction' in that section. Has the word the wide sense of inducing a girl to have carnal connection at any time or on any occasion, or is it used in the usual and ordinary sence of inducing a girl to part with her virtue for the first time?'' The court answers its question, thus: ''We must, there-

fore, come to the conclusion that seduction in this act has its ordinary sense of inducing a girl to part with her virtue for the first time.''

In that case the parents of a girl were convicted of encouraging the seduction of their daughter who was under the age of sixteen years. It appeared that one Burns while living with the girl's family, had connection with her on two occasions for which he was convicted and punished. Subsequently the family ''slept in a barn, Burns and the girl Bessie sleeping together in a corner of the barn. Three months later they moved to another town, ''where they all slept in a barn of thirteen feet three inches by eight feet two inches, Burns and the girl Bessie sleeping together in a corner of the barn.

The trial court charged the jury in part: ''If in your opinion either this man or this woman either caused or encouraged Burns and the girl to have connection with each other, then they are guilty of this offense, although it may be that they did not encourage the first connection between Burns and the girl if it happened without the prisoners' knowing anything about it.''

It was for this charge that the judgment was reversed, and the court laid down the rule cited *supra*.

This case, on its merits, is not one to so commend itself to me, as to require setting aside what has been the law of this State for several years.

Ruby King, the complaining witness, testified: ''He first had intercourse with me in June last; he had intercourse with me about twenty-five times between the time in June and the time in September, 1921; before September 15th, 1921, he had had intercourse with me about 25 times, I don't know exactly how many times. Yes, I went

in a car driven by Phil Walker from this county to River Junction; he (pointing to the defendant) fooled me to go with him on a promise to marry me. Yes, I had to stay all night because he wouldn't bring me back. John Hunter was with us. We stayed at Peacock's Hotel; Phil Walker did not stay with me that night. Mitchell Hunter did not stay with me that night.

Her father testified: "Ruby King is my daughter; she was 18 years old in April last. John Hunter, the defendant, asked me for her shortly before the child was born, but she backed out. He had been going to see her for some months."

Her letters show that she was the pursuer instead of the pursued. Here are some of the extracts from them: "G you jest ort to be with me this morning I am having some time onely wish you was hear with me you no we would injoy life Dont you Say did you go to the party least night I sure did want to go but done get home in time  I head a sporty date made but dine bet to fill it ha ha ant that bad. Say John I have a nise nole for you hurry up and ome and get it  Well I guess I head better close listen John I cant come to Stella Saturday afternoon and go to Mill Springs like I told you Sunday, I am sorry I cant." "Listen Sugar pie how did you injory your self least night I injory my self Better then I have in a long time For I wes with my Dear Little Loving Sweet Darling the onely one I love  Say you told me to Rite and tell you what papa and mama head to say about us staying for meeting tha dine say ine thing at all and af tha head it woulden af done ine good at all." "So listen Dear I am looking for you Wednesday night Be sure and come Sugar af you love me you will come So dear answer Real soon in a long sweet letter to the one that love you and come

Wednesday night S W A K.'' ''Listen John Mama and papa is mad because you come yesterday Listen kid tha are some that mad with you and me but listen John tha are going to be sorry af the way that have done me all the year  But that is all right it ant going to be this way menny more days I dont hardly think I will die be four I will stay hear.  Listen John I am sorry to say but please dont come hear no more for god sake not as I dont want you to but tha dont want you to come at all and John listen I ask papa about what you told me to and he said that he was going to do it unless we marry and was not going to stop it unless we did.'' ''Listen Kid Leon dine come back he is some what mad because I fool hem so bad.'' ''Listen be sure and go to Mill Springs Satday night I think I will be there go.''

Ruby King also testified: ''Each time he did this to me we were in my room; just a hall between my room and that of my father or mother.  We did this standing up.  The first time he did it we were standing up.  I did not cry.''

The defendant testified: ''Yes, I have had intercourse with her, and first time was in June last.  She was not virtuous when I first did this to her.  The first time was as easy as the last time.  I had intercourse with her quite a number of times before September 15th, 1921, the date alleged in indictment.  She says same thing.  She told me the first time I was with her that she was pregnant and asked me to marry her.''

Ruby King's importuning letters to the defendant (in none of which did she upbraid or charge him with being the father of her unborn child) corroborate the defendant's testimony on this point.

His testimony is corroborated in other particulars. He says: "She told me the first time I was with her that she was pregnant and asked me to marry her." The girl testified: "He fooled me to go with him on a promise to marry me."

The child was born in March. The indictment alleges the mother was chaste in September. The decision of the majority of the court not only overrules the Bynum case, but overrules the law of gestation.

The girl's father testified: "He had been coming to my house to see Ruby about 4 months at the time he stopped. There were two more boys, Albert Joyner and Mitchell Hunter, who came to see Ruby for a while but they didn't come so often after John Hunter commenced going with her. Ruby gave birth to a child but it died in a few minutes." "Of course I can't swear who is the father of the child; cannot swear who got her in that condition."

Notwithstanding the unreliability of the testimony for the State, I would feel constrained to concur in the decision if it were not for the other two questions I have discussed: the evil of ignoring at pleasure the doctrine of *stare decisis,* and the fallacy of the rule now adopted by the court, that a person may be convicted of having carnal intercourse with a woman whom the testimony shows was unchaste on the date that the indictment alleges that she was chaste.

TAYLOR, C. J. concurs.