Leroy HARTMAN et al., Appellants,
v.
Jack HARDER et al., Appellees.
No. 6844.

Court of Civil Appeals of Texas.
Amarillo.
March 16, 1959.

. Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Allen & Allen, Perryton, for appellants.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, Strasburger, Price, Kelton, Miller & Martin, Dallas, Lemon & Close, Perryton, for appellees.

CHAPMAN, Justice.

This is a personal injury case. The two minor sons of Harold Garrison, deceased, Billy Harold Garrison and Sammy Lee Garrison, through their respective guardians, Leroy Hartman and J. H. Callihan, brought this suit against Jack Harder d/b/a Harder Brothers' Trucking Company and Baker & Taylor Drilling Company, a corporation, to recover damages for the alleged wrongful death of the said Harold Garrison.

The collision out of which the alleged cause of action grew was between an automobile being driven by Harold Garrison and a truck being driven by an employee of the above named trucking company at a time when the trucking company was hauling a steel oil filed drilling rig in a northerly direction on State Highway 70 approximately 16 miles south of Perryton, Texas, for Baker & Taylor Drilling Company. At the time of the collision the Chevrolet being driven by the deceased, Harold Garrison, was proceeding in a southerly direction along said highway.

Trial was to a jury, which found appellees guilty of some six or seven acts of negligence which were proximate causes of the collision. The jury also found Harold Garrison guilty of improper lookout, excessive speed and drunkenness, which were proximate causes of the collision, but exonerated him on other questions of contributory negligence submitted. From said verdict the trial court rendered a take-nothing judgment. Appeal by appellants is founded solely upon the receipt in evidence of a certificate, certification of report, and report in the following language:

"Certificate

"The State of Texas }
"County of Travis }

"This is to certify that Joel Tisdale, the person whose signature is affixed to the attached 'Certification of Report' was Chief, Identification and Criminal Records Division, Texas Department of Public Safety, Austin, Texas, on the date of such 'Certification of Report', and that on said date, he, in such capacity and as lawful custodian and possessor of said report, had legal custody of the original laboratory report, copy of which is attached to said 'Certification of Report'.

"Witness My Hand, this 7th day of April, 1958.

"/S/ Homer Garrison, Jr.
Director, Texas
Department of Public
Safety

(Seal)

"Subscribed and sworn to before me, this 7th day of April, 1958.

(Seal)

"/S/ Dorothy N. Erwin
Notary Public in
and for Travis
County, Texas.

"Certification of Report

"State of Texas }
"County of Travis }

"I, the undersigned, Joel Tisdale, Chief, Identification and Criminal Records Division, Texas Department of Public Safety, Austin, Texas, hereby certify that the at-

tached is a true and correct copy of the laboratory report covering examination of:

"L–54592/0–39—G. Blood specimen from Harold Garrison, killed in traffic accident, 9–30–57, Perryton, Texas

as the same appears in my office in Austin, Travis County, Texas, and that I am the lawful custodian and possessor of said report.

"Signed by me at my office in Austin, Travis County, Texas, this the 26th day of March, 1958.

"/S/ Joel Tisdale
Chief, Identi-
fication and
Criminal Records
Division Texas
Department of
Public Safety

"Subscribed and sworn to before me by the said Joel Tisdale this the 26th day of March 1958.

"/S/ Mrs. Ben Fromme
Notary Public in
and for Travis
County, Austin,
Texas

"Ref. Art. 3731a and 3737e

"Texas Department of Public Safety

"5805 N. Lamar Blvd. Box 4087, North Austin Station Austin Identification and Criminal Records Division

"September 6, 1957

"Mr. Kenneth W. Harrison
Texas Highway Patrolman
Box 234
Perryton, Texas

"Subject: L–54592/0–39–G. Examination of blood specimen from Harold Garrison—killed in traffic accident, 9–30–57, Perryton, Texas.

"Dear Sir:

"We have completed the examination requested in connection with the above captioned subject and wish to report that the specimen contained 0.-22 per cent alcohol by weight.

"It is our opinion that the individual was intoxicated at the time the specimen was taken.

"Should this case be disposed of without our appearance, please advise the disposition in order that our files may be complete.

"Yours truly,
"Joel Tisdale,
Chief Identication and
Criminal Records
Division

"By: /s/ J. D.
Chastain
J. D. Chastain,
(Seal)     Laboratory
Manager

"64: ech
"cc enclosed
"cc: Major R. A. Crowder
Capt. J. W. Blackwell"

■ Appellants' first point asserts error of the trial court in admitting in evidence the letter to Kenneth W. Harrison, just quoted, from Joel Tisdale by J. D. Chastain, because it is not such a record as contemplated by Article 3731a, Vernon's Ann.Tex.Civ.St.; because it is hearsay; because it contains expressions of opinion by persons not shown to be qualified; because there was no proper predicate for the introduction, and because appellants were denied the right of cross examination.

Article 3731a, passed by our Legislature in 1951, provides in part that, "Any written statement, certificate, record, return or report made by an officer of this state or of any governmental subdivision thereof, or by his deputy or employee, in the performance of the functions of his office shall be, so far as relevant, admitted in the courts of this state as evidence of the matters stated therein, subject to the provisions in Section 3." Section 3 provides for notice to the adverse party a reasonable time before trial of the intention to offer such writing and "Section 4 deals

with the manner in which proof shall be made, i. e. authentication. This is done by an official publication or by a copy attested by the officer having legal custody of the record." Texas Law of Evidence, McCormick and Ray, volume 2, p. 169. Note 31 under Section 1293 at page 167 of the authority just cited says,

"The act was sponsored by the Texas Committee on Improvement of the Law of Evidence and was drafted for the Committee by Professer Charles T. McCormick and Dean Abner V. McCall. (Professer McCormick is a former Dean of the University of Texas Law School and Mr. McCall is presently the Dean of Baylor Law School.) It has been textually stated that:

"The statute introduces no new principles or theories concerning the admissibility of evidence. But it supplies a real need [32] in affording a single, simple and uniform procedure for making proof of the contents of any statement, certificate, record, return or report made by any state official in the performance of his duties." McCormick and Ray, Vol. 2, pp. 168–169.

"32. This is apparent when one considers that Texas has some 200 agencies, departments and institutions administered by some 140 boards or individuals. Most of these officials have special statutes providing that their records, etc., or certified copies thereof are admissible in evidence as prima facie proof of the matters therein stated. The numerous acts are scattered throughout the civil statutes and have no semblance of uniformity."

From this history of Article 3731a we are not willing to say it could never be legally possible under said article to introduce the result of a chemical analysis of blood made by an officer of this State or of any governmental subdivision thereof or by his deputy or employee, in the performance of the functions of his office by the procedure

provided in said article. However, we do not believe the record in this case furnishes sufficient predicate for its introduction in that it does not show the analysis was made by or under the supervision of a competent chemist or was made in the performance of the functions of his office. A careful study of the record nowhere shows us that either Joel Tisdale or J. D. Chastain were chemists or that either of them were specialists in any other profession by which they were qualified to determine the percentage of alcohol in a sample of blood. Accordingly, from the record of this case we believe any evidence introduced concerning the alcoholic content of the blood analysis made by either Mr. Tisdale or Mr. Chastain and labeled as L–54592/0–39–G. was inadmissible.

Complaint is also made by appellants of the method by which the blood was taken from the body of Harold Garrison during the time it was lying in the Boxwell Funeral Home in Perryton awaiting embalming, "for the reason that the specimen was taken without consent in violation of the constitutional rights against self-incrimination and unlawful searches and seizures, * * * and the entire manner in which the test was obtained so shocks the conscience as to violate the due process clause of the Constitution [U.S.Const. Amend. 14]." The testimony of Alton Boxwell, Mortician, showed:

"Q. And to your knowledge, the body was brought in and was put on the embalming table? A. It was on the table when I got there.

"Q. On a stretcher? A. On the table. I presume it came on a stretcher. I presume it did. I know it did.

"Q. And you stuck the needle in and pulled * * * A. No, I made an incision for the embalming process in the * * *

"Q. Jugular vein? A. * * * jugular vein. You take up the vein at

that point in the neck where the jugular vein is the largest.

"Q. And then you took the syringe after you made the incision? A. Yes, sir.

"Q. And what did you make the incision with? A. I believe a pair of —what is it—I don't remember how I did that. I stuck the needle into the vein and drew the blood out without making an incision in the vein.

"Q. With the syringe? A. Yes, with the point of the syringe.

"Q. Yes. And, in other words, just like you take blood out of somebody's arm. And you took the blood, then, and squirted it out of the syringe into the tube? A. Yes."

■ We believe appellants' point just stated is without merit. In the case of Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448, a blood sample was taken at the request of a police officer, by a physician from the accused while he was alive and unconscious. Self-incrimination, unlawful searches and seizures and the due process clause were all raised in the case and the United States Supreme Court denied all three contentions. Anyhow, the claim of self-incrimination could not possibly apply here because the donor was dead and could not be prosecuted. Additionally, such complaint is personal to the party the testimony would incriminate. Fleishman v. State, Tex.Civ.App., 91 S.W.2d 493.

■ Our case, on the facts, certainly does not come within the offense against that "sense of justice" of which the United States Supreme Court spoke in Rochin v. People of State of California, 342 U.S. 165, 72 S.Ct. 205, 210, 96 L.Ed. 183, 25 A. L.R.2d 1396, and we believe is not subject to even as much complaint as that made in the Breithaupt case, supra. The testimony of the Mortician indicates that an incision is made in the neck to reach the jugular vein in the embalming process. It is difficult for us to see how the act of a Mortician in extracting blood by a syringe from a dead body lying on the embalming table prior to the beginning of the embalming process could offend that "sense of justice" urged by appellants. Additionally, most of the reasons given in the Breithaupt case as to why the act of the officer and doctor in that case was not violative of the due process clause would apply equally as well as the action of the officer and Mortician in the case at bar. Accordingly, we hold appellants' constitutional violations complained of about self-incrimination, unlawful searches and seizures, and the due process clause are, under the authority of the Breithaupt case, without merit.

Since we have held that the testimony introduced by appellees concerning the alcoholic content of the blood sample taken from the deceased, Harold Garrison, was inadmissible we are then presented with the question as to whether under Rule 434 such error of law committed in the course of the trial amounts to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. A study of the record as a whole inclines us to a negative answer to such question.

Appellants argue by brief that the effect of admitting evidence of intoxication so permeated the entire case with the blight of whisky that the jury could not view objectively the other evidence and make an intelligent and impartial view of the findings on the other issues concerning Harold Garrison's conduct. To the contrary, we believe the answers of the jury indicate the opposite. They found appellees guilty of many grounds of negligence and assessed damages against them in the amount of $20,100. They found Harold Garrison guilty of drunkenness, improper lookout and excessive speed, but they acquitted him on the failure to have his car under proper control and driving to the left of the center line of the highway.

Though appellants made no complaint in their motion for new trial of the insuffi-

ciency of the probative evidence to support the findings of improper lookout and excessive speed on the part of Garrison or that those answers were so against the great weight and preponderance of the credible testimony, exclusive of the drunkenness evidence, as to be manifestly unjust or clearly wrong let us look at the testimony in light of the effect the drunkenness question might have had on the answers.

Kenneth Harrison, the highway patrolman who investigated the collision, testified that when he approached the scene of the collision from the north he could see the derrick for about a mile and that as he came upon it he saw the remains of a flag on the end of the standpipe, that portion of the derrick with which the Garrison car collided. He also testified that part of the flag was stuck around the windshield and part of it in the car.

With reference to the speed the Garrison car was traveling the patrolman testified that in his opinion, based upon his experience as an investigator, his investigation of the accident, what the automobile hit, where it went afterwards, and the damage done to the car Mr. Garrison was traveling between 70 and 75 miles per hour at the time of the collision. The evidence shows that the Garrison car hit the standpipe at the upper left-hand corner of the car just above the windshield and that a tip hanging down from the standpipe caught in the left-hand side of the car and ripped it on back all the way down the left side, tore away the entire left side of Garrison's head, and continued 642 feet from the point of impact into an iron culvert before it came to rest against it. The picture of the culvert introduced into evidence shows the end bent back into the soil and the earth loosed as if from a heavy impact.

The findings of the jury against appellants on the excessive speed issues and on proper lookout, but the findings in their favor on other issues and the assessment of more than $20,000 damages in their favor indicate to us that conscientious, intelligent

and discriminating consideration by the jury of each issue considered that was spoken of by our Supreme Court in the case of Cloud v. Zellers, 309 S.W.2d 806. In fact, the reasoning of that court in its discussion of Rules 434 and 503, Texas Rules of Civil Procedure, is so applicable to the case at bar that we believe it is decisive of the point under discussion. Had the jury been so prejudiced against Harold Garrison because of the liquor question in the case that they could not consider the other issues objectively it does not seem probable to us that they would have found he had his car under proper control, was driving on his side of the road, or would have assessed the liberal damages against those with whom he collided.

■ We believe the record before us shows that the jury, in their answers to all questions submitted, evidenced a discriminating effort to answer such questions intelligently and conscientiously from all the testimony before them and that appellants have not sustained their burden of demonstrating probable prejudice. The judgment of the court below is affirmed.