Ida B. DAVIS et al., Plaintiffs,

v.

BROOKS TRANSPORTATION COM-
PANY, Incorporated, et al.,
Defendants.

Civ. A. No. 2102.

United States District Court
D. Delaware.

Aug. 17, 1960.

Howard M. Berg, Wilmington, Del., for plaintiffs.

William Prickett, Wilmington, Del., for defendants.

LAYTON, District Judge.

This is a motion for summary judgment. The facts are so unusual that the motion should be granted out of hand if for no other reason than that, if there were a jury verdict for the plaintiffs, it is difficult to see how, in justice, it could ever be sustained.

On the night of September 25, 1958, the defendants' tractor trailer, driven by the co-defendant Massie, was proceeding west towards Baltimore on the outside, or north, lane of Route 40, a dual highway. The posted speed limits for trucks is 45 M.P.H. Both Massie and the driver of a following truck testified that he, Massie, was driving from 43 to 45 M.P.H. The tachometer on the defendant truck showed that at the time of the accident, it was proceeding 47 M.P.H. Ahead of Massie lay the relatively un-important intersection of Sunset Lake Road with Route 40. It is a flat, right-angled intersection. Five hundred feet south of this intersection on Sunset Lake Road is a warning that stop signs guarding Route 40 lie ahead. There are two stop signs against Sunset Lake Road, one just south of the eastbound section of the dual highway and the other in the middle of the grass plot separating the east and west sections of the highway. The three decedents, to whom I shall refer as plaintiffs, had come to Delaware from Kentucky a few days prior to the accident looking for work. Absolutely nothing is known of their whereabouts or actions prior to this accident. The uncontroverted evidence shows that their car, northbound on Sunset Lake Road, was proceeding at a speed from 60–80 M.P.H., did not slow down at the warning sign and proceeded out through this intersection without any slacking of speed whatsoever, through both stop signs and into the westbound lane of Route 40 where it collided violently with the rear wheels of the defendants' tractor. The impact was so tremendous that the tractor and trailer jack-knifed, the air brakes were broken and the tractor-trailer skidded and slewed a considerable distance down the highway before stopping. The three plaintiffs were killed almost instantly. At impact, the right-hand front door of the plaintiffs' car sprang open and the three were catapulted out. The conclusion of the investigating police was that the last man out, Charles Davis, was the driver. No other evidence is, or ever will be, available on this point and, since the conclusion is reasonable, in accordance with human experience, and because Davis alone of the three had a driver's license, I accept the fact that Davis was the driver. Blood tests demonstrated that Davis and Bubbich Griffith were intoxicated [1] and that James Griffith had been drinking.

1. The Delaware statute (11 Del.C. § 3507) states that $5/100\%$ to $15/100\%$ by weight of alcohol in the blood of a person is relevant evidence, but not prima facie evidence, of being under the influence of intoxicating liquor; and that over $15/100\%$ by weight of alcohol in the blood of a person is prima facie evidence of intoxication. This, together with the reckless manner in which the car was being driv-

The first question for decision is whether Massie was guilty of any negligence which was a proximate cause of the accident. If not, that is an end to the matter. He was going slightly, very slightly, in excess of the legal limit. This was negligence per se. But was this excess speed of two miles per hour over the statute a proximate cause of the accident? The point of inquiry is whether this accident would have ever happened at all but for the incredibly reckless operation of the plaintiffs' machine, bearing in mind that even had the defendants' truck been stopped, the accident would have still happened. Thus viewed, it is apparent that the sole cause of the accident was the reckless negligence of plaintiff Davis.[2] Compare Warren v. Anchor Motor Freight, Inc., Del.Super.1951, 7 Terry 188, 81 A.2d 321; Davis v. Younger Bros., Tex. Civ.App.1953, 260 S.W.2d 637; Knecht v. Buckshorn, Ct.App.Ky.1930, 233 Ky. 329, 25 S.W.2d 727; Maiwald v. Public Service Co. of N. H., Sup.Ct.N.H.1945, 93 N.H. 276, 41 A.2d 247; Wilmes v Mihelich, Sup.Ct.Minn.1947, 223 Minn. 139, 25 N.W.2d 833.

The plaintiffs also charge that the defendant failed to keep a proper lookout contributing to the accident. Before considering this point, the Delaware case of Williams v. Chittick and Kozelski, Sup.Ct.Del.1958, 139 A.2d 375, 378, should be examined. The facts are quite similar. Kozelski was driving north on Route 13, a favored route. Chittick, the deceased, was his passenger riding in the front seat. There is a question as to whether Williams, driving the vehicle on the disfavored road stopped at the intersection or, as here, proceeded on through without stopping at the stop sign, and ran into the side of the Kozelski car killing Chittick. In any event, whether Williams stopped at the stop sign or proceeded on through,

Kozelski did not see his car until immediately before the collision. A Delaware statute, 21 Del.C., § 4125(b) requires every driver to proceed at an "appropriate reduced speed when approaching and crossing an intersection". Williams contended that Kozelski was guilty of negligence in failing to control his car properly at the intersection and in failing to keep a proper lookout. As to the question whether Kozelski's failure to reduce his speed at the intersection constituted negligence which was a proximate cause of the accident, the Supreme Court said this:

"[2, 3] Was Kozelski guilty of negligence? Kozelski was operating his car on a through highway. He was the favored driver. As such he was entitled to assume that Williams would obey the law and would not enter the intersection until he could do so with reasonable safety. That right continued until Kozelski was put on notice that Williams was entering, or was about to enter, the highway in the path of Kozelski's car. Absent this circumstance which would place him on warning that another vehicle was about to enter the highway in an unlawful manner, Kozelski was not bound to anticipate negligence on the part of such driver traveling on the less-favored street but was entitled to proceed without abating the speed of his car. * * * In entering the highway as he did, Williams was admittedly guilty of negligence contributing to the accident. The question of whether or not he stopped at the stop sign—as he says he did—or entered the intersection without stopping is not important here. In either case, he was guilty of negligence contributing to the accident.

en and the fact that no other evidence of Davis' condition has been, or probably ever will be, produced dictates the conclusion that the two mentioned were under the influence of alcohol.

2. The Delaware stop sign statute (21 Del. C. § 4143(b)) requires a driver on the disfavored road (1) to stop and (2) not to enter the favored road until it can be done in safety.

"[4] Williams makes much of the words 'appropriate reduced speed' found in Section 4125(b) of Title 21 Del.C.1953. He interprets this clause to mean that it is mandatory upon the driver on a through highway, at all times and under all conditions, to reduce the speed of his car to an 'appropriate reduced speed', whatever that may be. He says that in failing to reduce his speed at the intersection, Kozelski violated this statute.

"We do not agree. It is generally unnecessary for a driver on a through highway to slow down when he reaches an inferior crossing to ascertain whether a driver on the latter road will observe the provisions of the law and the stop sign erected in accordance therewith. * * * Unless the driver on the through highway has some warning of danger likely to occur at such intersection, the words 'appropriate reduced speed' have no significance here. * * * "

Curiously enough there was no discussion by the Court of the charge of failure to keep a proper lookout. As in this case, the defendant driver, Kozelski, did not see the Williams car at the intersection. Unlike this case, it was "dusk" and there was a question whether Williams' lights were on. In the instant case, the plaintiffs' lights were on and were seen by the following truck driver but he was unable to say just when in relation to the accident.

Despite the question whether or not Williams' lights were on and, whether or not even if his lights were not on, Kozelski could or should have seen the Kozelski car in time to have averted the collision as charged, the trial judge granted a directed verdict and the Supreme Court sustained, contenting itself by saying only this as to lookout:

" * * * This does not mean that he does not have to keep such lookout as a reasonably prudent person would do in order to discover possible danger or to act carefully under existent conditions. Of course, cases may arise where under certain circumstances the driver on a favored road may be guilty of negligence contributing to the accident. But he is not required to slow down in anticipation of danger which has not become apparent."

Conceding that Massie was duty bound to keep a reasonable lookout to discover possible danger, should he have seen the plaintiffs' car and concluded that its speed constituted a danger in time to have slowed down or otherwise averted this accident? We know that the headlights were visible at some point just prior to the intersection and that the driver of the following truck saw them and realized that from the "bobbing" of the lights, the plaintiffs were going at high speed. We know that Massie did not see the plaintiffs' car until it was about 20 ft. to his left or, in other words, when plaintiffs' car was just about at the second stop sign in the edge of the grass plot. We also know that in a dual highway of this sort, the southerly intersection of Sunset Lane Road with Route 40 was nearly 100 ft. to Massie's left and that his most imperative duty was to keep his eyes on the road ahead generally and for traffic emerging from his right as well as for cars slowing ahead of him to turn left or emerging from his immediate left into his own southbound lane of traffic. Under such circumstances, with the streams of traffic using our modern highways and, particularly at night, it is imposing a heavy duty upon a driver to say that he must also keep a lookout for traffic coming into the eastbound lane of Route 40 nearly 100 ft. away. Even so, on a motion for summary judgment, I feel that it would be invading the province of a jury to hold that, as a matter of law, Massie was under no duty to have seen plaintiffs' car and appreciated the danger sooner. The Chittick case does not help the defendant here. There it was dusk, the Williams car was apparently stopped and then came out of the intersection, and both the Superior and Supreme Court

seem to have assumed that Williams' lights were not on. Here, while night, the lights of the plaintiffs' car were on and plaintiffs' car was moving very fast. As earlier observed, a following truck driver saw the lights before Massie did and, from their bobbing and weaving, knew that the car was going rapidly, thus indicating a potentially dangerous situation. Accordingly, I decline to grant summary judgment on the ground that, whether or not Massie was keeping a proper lookout, under these circumstances, would be a jury question.

■■ Where the plaintiffs guilty of contributory negligence? In order to decide this question, a number of subsidiary questions must be first answered. Certainly the plaintiff, Davis, was guilty of gross negligence and summary judgment is granted as to him without further discussion. But the negligence of Davis is not imputable to his passengers. The defendant argues with considerable merit that, since both passengers were intoxicated or semi-intoxicated, they were guilty of contributory negligence and, moreover, knowing that their driver, Davis, was under the influence of alcohol, they assumed the risk of the consequences.

■ However, plaintiffs argue first that the evidence of drunkenness was illegally obtained because the blood tests were taken without the consent of the plaintiffs all of whom were dead and, accordingly, their Constitutional rights were invaded. But this argument will not stand close examination. The Constitutional rights asserted by plaintiffs' intestates here were personal to the deceased alone. Rickards v. State, Del. Sup.Ct.1950, 6 Terry 573, 77 A.2d 199; Mumford v. Croft, Del.Super.1952, 8 Terry 464, 93 A.2d 506; State v. Carter, Del.Super.1952, 8 Terry 147, 89 A.2d 131. The rationale of the rule is stated in the comment on American Law Institute's Model Code of Evidence (Rule 202):

" * * * The object of the privilege is protection against punishment, not prevention of compulsory disclosure of criminal conduct.

Hence when punishment for a given crime is made impossible, the privilege with reference to that crime ceases to exist."

Here, the plaintiffs were dead. They could not be indicted and tried for drunken driving or intoxication. Thus, the privilege, if any, had disappeared.

A number of cases are directly in point. Thus, in the following cases, the evidence of blood samples containing alcohol taken from the body of a deceased were admitted over objection. Fretz v. Anderson, Sup.Ct.Utah 1956, 5 Utah 2d 290, 300 P.2d 642; Hartman v. Harder, Tex.Civ.App.1959, 322 S.W.2d 555.

There are also a number of decisions admitting evidence of blood containing alcohol taken from a person when unconscious upon the ground that the Constitutional privilege only extends to testimonial evidence. (For instance, see Alexander v. State, Crim.Ct. of Appeals of Okl.1956, 305 P.2d 572. I express no opinion as to this theory for, in any event, it is clear from the authorities first cited that the plaintiffs' argument is without foundation.

■ Next plaintiffs assert that the blood tests consisting of a portion of the police report on the accident are privileged. 21 Del.C. § 318 sets up a system for the collection, making up and filing of accident reports and states that such reports shall be "without prejudice", and " * * * neither the report required by subsection (b) of section 2909 * * * nor * * * shall be referred to in any way, or be any evidence of the negligence or due care of either party, at the trial of any action at law to recover damages." 21 Del.C. § 2913. However, it is very clear in reading the various sections referred to that the intention of the legislature was not to render privileged that portion of the report concerning the investigation by the police—merely that portion which consisted of the driver's report. This is for the reason that public policy demands that full reports of accidents be rendered, that drivers of cars are naturally loath to implicate themselves and, unless some immunity is extended, such

drivers cannot be expected to disclose facts which might tend to render them liable not only criminally but civilly.

To say that the legislature intended the suppression not only of the facts furnished by the operator of the vehicle involved but also all facts ascertained by the police investigation would amount to a suppression of truth which would be outrageous. Every day our police testify as to distances, skid marks, condition of the machines, location of debris marking the exact spot of the collision and numerous other details comprising their investigation of accidents. It would be utterly naive to assume they are testifying from memory for, clearly, they could not remember the scores of accidents investigated by them as long as two and three years later. They are testifying from reports. This sort of testimony has been regularly admitted without question, indeed, without objection. This is the sort of testimony with which we are concerned here. While no Delaware authorities bear upon this question, the courts of other states, where similar statutes have been involved, have consistently applied the interpretation that only the operator's report, *not that portion thereof comprising the police investigation,* is privileged. Clark v. Reichman, Colorado Sup.Ct. 1954, 130 Colo. 329, 275 P.2d 952; Carlson v. Brunette, Sup.Ct.Mich.1954, 339 Mich. 188, 63 N.W.2d 428; Lawyerson v. Nadeau, Sup.Ct.Me.1940, 136 Me. 361, 10 A.2d 357; Ezzo v. Geremiah, Sup.Ct. Conn.1928, 107 Conn. 670, 142 A. 461. The blood tests are not privileged.

We have, then a case where the driver, Davis, must be presumed to have been under the influence of alcohol to the extent that he would be liable criminally; that the passenger, Bubbich Griffith, was in the same condition; and the passenger, James Griffith, had sufficient alcohol in his blood to justify a jury in also finding him to be under the influence of alcohol. Under such circumstances, may passengers recover damages in a civil action either from the operator of their machine or from a third party?

The Courts of this State have not spoken on this point except to the extent of following the widely accepted principle that,

" * * * the passenger is bound to exercise due care and caution as well as the driver. It is no less the duty of the passenger, where he has the opportunity to do so, than of the driver, to learn of danger, and to avoid it if practicable." Campbell v. Walker, Del.Super.1910, 2 Boyce 41, 78 A. 601, 604.

See also Poynter v. Townsend, Del.Super. Ct.1924, 3 W.W.Harr. 51, 130 A. 678. However, a reading of cases from other jurisdictions upon this point convinces me that our Courts would deny recovery in a case where an intoxicated passenger sued his driver or a third party, either upon the ground of contributory negligence or assumption of risk. Perhaps the leading case is Schubring v. Weggen, Sup.Ct.Wis.1940, 234 Wis. 517, 291 N. W. 788, 790, where the Court said:

"It is plain common sense that one who has voluntarily become so intoxicated as to be bereft of his faculties ought not to be held exempt from the doctrine of assumption of risk when he voluntarily enters and remains in an automobile driven by a drunken driver. One who has become so bereft ought to be held to the same degree of responsibility for protecting himself that he would be subject to if he were not intoxicated. Voluntary intoxication does not relieve one driving an automobile from his responsibility to care for others. No more should it relieve one voluntarily riding in an automobile from responsibility to care for himself. Voluntary intoxication in such case does not exempt one from the doctrine of contributory negligence. No more should it exempt one from the doctrine of assumption of risk. Contributory negligence and assumption of risk, if the former does not include the latter, are at least sufficiently related to bring both

host and guest under the same rule as to non-exemption from responsibility. As intoxication of the host does not exempt him from responsibility for protection of others, so intoxication of the guest does not exempt him from responsibility for self-protection. This should be the rule in case of reckless misconduct as well as in conduct amounting only to ordinary negligence. The reckless misconduct of the defendant that made him guilty of gross negligence was going from tavern to tavern all day and drinking until he became so intoxicated as to be bereft of ability to drive an automobile. The decedent (passenger), if he was so drunk that he did not appreciate the hazards incident to riding in an automobile driven by a drunken driver, was guilty of the same kind and degree of recklessness for his own safety as was the recklessness of the defendant for the safety of others. Reckless conduct of the guest should have the same effect as to himself, that reckless conduct of the host has as to others."

To the same effect are Saxton v. Rose, Miss.Sup.Ct.1947, 201 Miss. 814, 29 So. 2d 646; Packard v. Quesnel, Sup.Ct.Vt. 1941, 112 Vt. 175, 22 A.2d 164; Sparks v. Chitwood Motor Co., Sup.Ct.Ark.1936, 192 Ark. 743, 94 S.W.2d 359; House v. Schmelzer, D.C.App.Cal.1935, 3 Cal.App. 2d 601, 40 P.2d 577.

To permit these two passenger plaintiffs to recover here would be a miscarriage of justice. The authorities on this proposition are so strong that I am convinced as a matter of law that Bubbich and James Griffith were guilty of assumption of risk or contributory negligence, it does not matter which.

■ Finally, there are two other matters for consideration. The plaintiffs say that summary judgment will not lie here because there is a presumption in a death case that the plaintiff was in the exercise of due care at the time of the accident. The short answer is that this presumption disappears where there are witnesses to the accident. There is no such presumption in this case. Reed v. Queen Anne's Railway Co., Del. Super.1903, 57 A. 529.

■ Lastly, it is argued that summary judgment is precluded here by the Third Circuit decision in Frederick Hart & Co. v. Recordograph, 169 F.2d 580. There the Third Circuit held that where affidavits of a defendant contradicted well-pleaded facts in the complaint, there arose a genuine fact issue with the result that summary judgment could not be granted. This decision has been frequently criticized and, wherever possible, distinguished.[3] It is obvious that, literally applied, it would render meaningless Rule 56 F.R.Civ.P., 28 U. S.C. Judge Forman refused to apply Hart in cases where the complaint consisted of conclusory allegations. Vanity Fair Mills v. Cusick, D.C., 143 F.Supp. 452. While not authority here, the language of Judge Carey in McGuire v. McCollum, Del.Super.1955, 10 Terry 359, 116 A.2d 897, 901 is extremely apt.[4]

"The allegations in the complaint mean little in the face of the facts. Certainly, if all the evidence is insufficient to make out a case for the jury, the complaint cannot supply the deficiency."

In the case at bar, the negligence of the defendants is set out in a series of conclusory allegations such as excessive speed, failure to keep a proper lookout, etc. Consequently, following Judge Forman, I decline to apply the Hart case to these facts.

The defendants' motion for summary judgment is granted. Let an order be entered in accordance herewith.

3. Rolm & Haas Co. v. Permutit Co., D.C., 130 F.Supp. 260; Wise v. Universal Corp., D.C., 93 F.Supp. 393; Wild Life Preserves v. Algonquin Gas Transmission Co., D.C., 113 F.Supp. 112.

4. Delaware's Civil Rule 56, Del.C.Ann. is the same as the Federal Rule.