Armenna **RAVELLETTE**, Administratrix of the Estate of Oren A. Ravellette, Plaintiff-Appellant,

v.

Richard F. **SMITH**, Defendant-Appellee.

No. 13393.

United States Court of Appeals Seventh Circuit.

March 28, 1962.

---

N. George Nasser, Edward L. Hamilton, Terre Haute, Ind., for appellant.

Thomas M. Patrick and Dix, Dix, Patrick & Ratcliffe, Terre Haute, Ind., for appellee.

Before HASTINGS, Chief Judge, and CASTLE and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Plaintiff, Armenna Ravellette, administratrix of the estate of Oren A. Ravellette, brought this suit based on diversity jurisdiction against defendant, Richard F. Smith, to recover damages for the wrongful death of plaintiff's husband, Oren A. Ravellette, allegedly caused by defendant's negligence. Defendant was the driver of an automobile which struck and killed decedent as he was directing a military convoy onto a highway near Morgantown, Indiana. A jury returned a verdict for defendant upon which the District Court entered judgment. This appeal followed.

On June 3, 1960 decedent, a maintenance sergeant in the Indiana National Guard, was a member of a military convoy proceeding from Terre Haute to Camp Atterbury, Indiana. At approximately 11:15 p. m. the convoy was de-

tained due to a malfunction of one of the vehicles. At this point the convoy was heading east on a section of level paved highway which ran generally in an east-west direction. While detained, the convoy vehicles were parked on the south berm of the roadway off of the pavement and in a line with an interval of from three to five feet between vehicles. None of the vehicles had clearance lights although their headlights were burning. Flares were carried in the convoy but none was used.

After surveying the situation, the commanding officer decided that the convoy should proceed to Camp Atterbury. The officer testified he told decedent to remain with the disabled vehicle to attempt to repair it and to " * * * see to it that the convoy gets back onto the highway. Direct the convoy back on the highway. Something of that nature."

Decedent stationed himself on the highway facing west in the westbound lane. He directed the convoy back onto the highway by moving a flashlight from right to left in the general area in front of his body. While decedent was so engaged, defendant approached the scene heading west at approximately thirty-five to forty miles per hour. He testified that he did not see any warning sign and did not see the flashlight; that after he had met two or three of the oncoming vehicles he was blinded by headlights angling toward him from the opposite side of the road; and that he applied his brakes, then saw decedent an instant before colliding with him. Decedent was removed to a hospital in Franklin, Indiana, where he was pronounced dead on arrival. An autopsy was subsequently performed at the request of the coroner at which time a blood sample was taken without the consent of decedent's family. An analysis of the sample disclosed a reading of 0.24 per cent blood alcohol. This amount of alcohol was testified to be sufficient to impair

judgment in a person with physical characteristics similar to decedent's.

The errors asserted by plaintiff are the trial court's refusal to give certain of plaintiff's requested instructions and the giving of other instructions.

The objections pertaining to the instructions and requested instructions. basically fall into three categories. Consequently, the instructions given or refused need not be discussed seriatim. The basic errors asserted are: (I) Decedent was not a pedestrian but an emergency worker [1] and consequently the trial judge should have instructed the jury on the standard of care required of an emergency worker rather than the standard required of an ordinary foot traveler on the highway. (II) Evidence of decedent's blood alcohol, secured from his dead body without the consent of his family, was improperly introduced and it was error to instruct the jury that they could take this evidence into consideration. (III) It was error to instruct the jury that if they found that. the sole proximate cause of decedent's. death was the failure of the Indiana. National Guard or its personnel to exercise due care then they should find for defendant.

## I.

The cases cited by plaintiff as showing that the standard of care required of a pedestrian should not have been applied to decedent involved persons such as construction workmen or traffic officers who were required to be in the traveled portion of the highway in order to properly perform their duties. Typical is Isgro v. Plankinton Packing Co., 176 Wis. 507, 186 N.W. 606, 609, where the court referring to an injured construction laborer who was helping to relay pavement in the street said, "He occupied a different position with respect to the degree of care required by him than an ordinary traveler upon the high-

1. By emergency worker, plaintiff evidently means one who is properly and necessarily in the roadway in the performance of his duties as opposed to a worker who

finds himself in an emergency situation within the sudden peril doctrine. An instruction was given concerning the sudden peril doctrine.

way * * * he was necessarily there in the performance and discharge of his duty."

The evidence in the instant case shows decedent was not necessarily required to be on the paved portion of the highway. His commanding officer testified that decedent was not ordered to stand on the pavement and that there was nothing in the prescribed or accepted method of bringing a convoy onto a highway which would require him to do so. The opposite or north berm of the highway was twenty-five feet wide and unoccupied. There is no evidence which infers that decedent was *required* to be on the pavement. Consequently, we find no error in the trial court's classification of decedent as a pedestrian or in the instructions pertaining to the degree of care required of him.

The instructions which were given properly set forth the duties of the decedent as a pedestrian to exercise ordinary care for his own safety[2] and permitted the jury to take into consideration the surrounding circumstances in determining whether he acted reasonably.

## II.

Plaintiff's contention that the evidence of blood alcohol should not have been admitted is based upon an asserted violation of rights embodied in the Indiana Constitution as well as a violation of "the right of privacy." Plaintiff's argument may be condensed to two points: (1) The evidence was inadmissible because it was obtained in violation of decedent's rights under Article I, Section 11 of the Indiana Constitution.[3] (2) Decedent's body became the property of his widow according to Indiana law and since the blood was taken without her consent, the evidence was inadmissible because it was obtained in violation of her right under Section 11 to be secure in her "effects."

As far as we can determine Indiana courts have not passed on the question of admissibility of blood tests where the blood was taken from a dead body without the consent of the next of kin.

▇▇▇▇▇ In support of the contention that decedent's constitutional rights were violated plaintiff cites cases from other jurisdictions which hold that evidence obtained from blood samples taken from unconscious persons is inadmissible.[4] These cases are inapposite because they are concerned with a violation of the rights of a living person. In the instant case, decedent was dead when the sample was taken. The law, frequently expressed, is that the rights guaranteed by the search and seizure provisions of state and federal Constitutions are personal rights. Davis v. Brooks Transportation Co., D.C., 186 F.Supp. 366; Lovette v. United States, 5 Cir., 230 F.2d 263. Decedent's right, being personal, could not survive his death and cannot validly be urged by plaintiff. The same reasoning applies to the asserted invasion of decedent's privacy.

Plaintiff's contention that her right to be secure in her effects has been violated poses a different problem. The only authority cited dealing precisely with this point is Fretz v. Anderson, 5 Utah 2d 290, 300 P.2d 642. There, in an action against the estate of a deceased for personal injuries arising out of an automobile collision, the court rejected an argument that blood taken from the deceased, who was the driver of one of the vehicles, without the consent of his next of kin rendered the blood alcohol evidence inadmissible.

2. Cf. Young v. Citizens' Street Railway Co., 148 Ind. 54, 44 N.E. 927, 47 N.E. 142; Indianapolis Traction & Terminal Co. v. Crawley, 51 Ind.App. 357, 96 N.E. 392.

3. Section 11 provides in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated." The wording is similar to the search and seizure provision of the Fourth Amendment of the federal Constitution.

4. Lebel, Adm'r v. Swincicki, 354 Mich. 427, 93 N.W.2d 281.
   State v. Wolf, 1 Storey 322, 51 Del. 322, 164 A.2d 865.

■ We are likewise of the view that the taking of the blood sample from decedent's body without plaintiff's consent did not violate her constitutional right to be secure in her effects safeguarded by Article I, Section 11 of the Indiana Constitution.

■ The fallacy of plaintiff's contention lies in the assumption that decedent's body was plaintiff's property according to Indiana law and consequently an effect protected from unauthorized search by Section 11.

Plaintiff relies upon Meek v. State, 205 Ind. 102, 185 N.E. 899, where the court upheld a conviction of blackmail under a statute making it a crime to threaten to do injury to the person or property of anyone with intent to extort money. The defendant had threatened to remove from the grave and sell the body of a woman's husband unless she paid two hundred dollars. The defendant contended that there was no cause of action under the statute because the widow had no property right in the body. The court upheld the conviction and stated:

"If the widow had any interest in the dead body of her husband which might be considered a property right, it was her right to have the body remain undisturbed in its grave, and a removal of the body would injure and interfere with this property right * * *."

We believe the holding in Meek is sound but the case is not authority for plaintiff's proposition.

In Orr v. Dayton & M. Traction Co., 178 Ind. 40, 96 N.E. 462, 48 L.R.A.,N.S., 474, the court in referring to the right that the next of kin has in the body of a deceased said, " * * * while there cannot be said to be property in the bodies of the dead in the general sense of property, they are the subject of rights which the courts ought to and will respect by proper actions." It appears from the cases cited in Orr and other cases that the rights which the courts will respect are the right to possession and custody of the body for burial, the right to have the body remain undisturbed in its sepulcher, and the right to maintain an action to recover damages for any outrage or indignity to the body. Cf. Burney v. Children's Hospital, 169 Mass. 57, 47 N.E. 401, 38 L.R.A. 413; Enos v. Snyder, 131 Cal. 68, 63 P. 170, 53 L.R.A. 221; 15 Am.Jur., Dead Bodies § 6, at 831.

Thus, consistent with the holding in Meek, plaintiff's interest in decedent's body is only a limited interest which is considered to be in the nature of a property right for burial purposes and for allowing recovery for outrages committed against the body. We hold that the taking of the blood sample without plaintiff's consent was not a violation of a protected property interest within the meaning of Article 1, Section 11 of the Indiana Constitution. The taking of the blood sample could not be so shocking an action as to be considered an outrage or indignity to the decedent's body. Cf. Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448.

■ The blood alcohol evidence was properly admitted and the instructions relating thereto were correct.

### III.

■ Plaintiff's final objection is to an instruction which in substance and in part stated that if the jury found the sole proximate cause of decedent's death was the negligence of the Indiana National Guard or its personnel then they must find for defendant. Plaintiff apparently interprets the instruction to mean that if the jury found negligence on the part of the National Guard or its personnel such negligence was imputable to decedent.

This interpretation is not justified. The trial judge repeatedly emphasized in the instruction that the jury must find for defendant if the sole proximate cause of decedent's death was the negligence of the National Guard or its personnel. The instruction patently states the correct law. It did not permit the jury to impute the negligence of the National

Guard or its personnel, if such existed, to decedent.

We have examined the other errors urged with regard to the few remaining instructions given or refused which do not fall in the categories we have drawn. Plaintiff's arguments as to these remaining items are not persuasive.

We think the trial court's instructions properly embodied the law of the case and that the requested instructions which are included in this appeal were correctly refused.

The judgment of the District Court is affirmed.