J. H. ROSE TRUCKING COMPANY, a corporation, and Transport Insurance Company, a corporation, Petitioners,

v.

Alma Jane BELL, and State Industrial Court, Respondents,

In the matter of the death of Oliver K. Bell.

No. 41879.

Supreme Court of Oklahoma.

April 4, 1967.

Ross, Holtzendorff & Bond, by Jay R. Bond, Oklahoma City, for petitioners.

William A. Kerr and Carl E. Moslander, Oklahoma City, Charles Nesbitt, Atty. Gen., for respondents.

HODGES, Justice.

This is an original proceeding to review an award entered by the State Industrial Court in favor of the claimants under the death benefit provisions of the Oklahoma Workmen's Compensation Act. Parties will be referred to as they appeared before the Industrial Court.

The evidence is undisputed that while working in the course of his employment as a truck driver for the respondent, J. H. Rose Trucking Company, the deceased, Oliver K. Bell, on June 11, 1965, on a highway near Tucson, Arizona, lost control of his truck, and either jumped or was thrown therefrom sustaining a skull fracture from which injury he died a few hours later.

The deceased left surviving him as heirs dependent upon him for support under the death provisions of the Workmen's Compensation Act his wife, Alma Jane Bell, and his minor daughter, Kanetha Jane Bell, who are the claimants in this action.

The sole defense of the respondent is that the death of Oliver K. Bell resulted directly from his intoxication while on duty. The Workmen's Compensation Act, 85 O.S. 1961, § 11, exempts the employer from liability where the injury or death of the employee "results directly from the intoxication of the injured employee while on duty".

The evidence of respondent established that about 30 minutes prior to the accident the deceased was driving the truck erratically on the highway.

A patrolman with the State Police Department of the City of Tucson testified that he was close to and observed the deceased in the hospital a few hours after the accident. The deceased was unconscious but had not yet expired. He was within two inches of the face of the deceased and could smell a very strong alcoholic odor upon the breath of the deceased and about his person.

Dr. B, a pathologist, performed an autopsy on the body of deceased, Oliver K. Bell, approximately eleven hours after the deceased was admitted to the hospital. In performing the autopsy he extracted two blood samples from the heart of the deceased. He testified that this was standard procedure in the making of autopsies as a portion of the work of the coroner's office in cases of violent death, and was in accord with the rules and regulations of the Arizona Courts.

Respondent attempted to submit in evidence the deposition of Mr. V, a chemist, employed by the City-County Crime Laboratory of Tucson, Arizona. The witness testified that he made a chemical analysis of one of the blood samples taken from the body of the deceased, and that it contained 0.21 per cent alcohol. Expert testimony was then introduced to establish that the blood alcohol content of the deceased at the time of the accident was approximately 0.351 per cent and that 0.15 per cent alcohol content in the blood will cause intoxication.

The trial court excluded the above evidence with reference to the chemical analysis of the blood samples on the sole ground that the blood samples were secured without permission of the deceased, or anyone authorized to give authority, and entered an award for the claimants.

On appeal the respondent contends that the trial court erred in excluding the evidence showing the alcohol content of the blood samples taken from the body of the deceased, Oliver K. Bell.

The claimants on the other hand argue that the blood samples were extracted without permission of the deceased or someone in authority. They assert that the taking of the blood samples under these conditions

contravened the requirements of due process and violated Article 2, Section 21 of the Oklahoma Constitution which prohibits a person from being required to testify against himself. We do not agree.

■ The purpose of the privilege against self-incrimination is to protect any person, whether he be a witness or an accused, from being compelled to disclose information which may subject him to criminal liability. This privilege is purely personal to a witness and the claimants cannot invoke it on behalf of the deceased or for the protection of third persons. McAlister v. Henkel, 201 U.S. 90, 26 S.Ct. 385, 50 L. Ed. 671; Castleberry v. State, 10 Okl.Cr. 504, 139 P. 132; Hartman v. Harder, Tex. Civ.App., 322 S.W.2d 555. Further, the evidence of the blood alcohol test sought to be admitted in the instant case does not subject the claimants to any criminal liability. The fact the claimants may suffer pecuniary loss is not sufficient to invoke the privilege since the provision as to self-incrimination applies only to liability for criminal prosecution. Ross v. Crane, 291 Mass. 28, 195 N.E. 884; Application of Delehanty, 280 App.Div. 542, 115 N.Y.S.2d 614, aff'd 304 N.Y. 725, 108 N.E.2d 46.

In State ex rel. Evertson v. Cornett, Okl., 391 P.2d 277, this court held in a civil proceeding involving the paternity of a child that an order of the court requiring a child to submit to a blood test did not infringe her constitutional guarantee against self-incrimination. We stated therein that the constitutional provisions against self-incrimination are directed only to that testimony which tends to show that the witness is guilty of a crime. For that reason the cases of Cox v. State, Okl.Cr., 395 P.2d 954, and Lorenz v. State, Okl.Cr., 406 P.2d 278, are not in point.

■ We hold that the results of the blood alcohol test were not inadmissible in this case as being in violation of the claimants' privilege against self-incrimination.

The claimants next contend that evidence of a blood test, taken without permission or authority, violated the due process clause of the State and Federal Constitutions.

■ In this action we are only concerned with the constitutional rights of the claimants. Since the claimants' decedent was dead when the blood test was made, the decedent's rights, being personal, could not survive his death. In other words, "the rights which the plaintiffs (claimants) are seeking to assert are not derivative". Kelley v. Post Publishing Co., 327 Mass. 275, 98 N.E.2d 286; Ravellette v. Smith, 7th Cir., 300 F.2d 854.

Whether a blood test may be taken from a deceased without consent of the next-of-kin has been considered and the right to do so upheld in several cases in civil proceedings. See Davis v. Brooks Transportation Co., D.Del., 186 F.Supp. 366; Hartman v. Harder, Tex.Civ.App., 322 S.W.2d 555; Fretz v. Anderson, 5 Utah 2d 290, 300 P.2d 642; Ravellette v. Smith, supra.

A factual situation similar to the present action was considered in Ravellette v. Smith, supra. There the plaintiff's decedent was struck by the defendant's automobile. An autopsy was performed at the request of the coroner at which time a blood sample was taken without the consent of decedent's family. In that case, the court admitted the blood test in evidence in an action for wrongful death and held that the taking of the blood sample without the consent of the decedent's family was not "so shocking an action as to be considered an outrage or indignity to the decedent's body."

In Hartman v. Harder, supra, the plaintiffs' decedent was killed in an automobile collision. The court there stated that the admission in evidence of a chemical analysis of blood taken from the deceased, without consent, upon a proper predicate, would not violate the plaintiffs' constitutional rights against self-incrimination, against unlawful searches and seizures, and to due process of law.

In State v. Cornett, supra, we considered the question of due process in an order of a court requiring a blood test on a child in a paternity proceeding. We held that the

blood test did not "constitute a violation of due process."

The contention that the non-consensual extraction of blood samples from a person is violative of due process has been considered and rejected by the Supreme Court of the United States. While these decisions are factually distinguishable, we believe that they strengthen our conclusion that there has been no violation of due process in the instant case.

In Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448, the court upheld a conviction of involuntary manslaughter where there was introduced into evidence the results of a blood test taken from the defendant without his permission. The court in rejecting the argument that such evidence violated the due process clause of the Fourteenth Amendment stated:

"* * * To be sure, the driver here was unconscious when the blood was taken, but the absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional right; and certainly the test as administered here would not be considered offensive by even the most delicate. * * * The blood test procedure has become routine in our everyday life. It is a ritual for those going into the military service as well as those applying for marriage licenses. Many colleges require such tests before permitting entrance and literally millions of us have voluntarily gone through the same * * * We therefore conclude that a blood test taken by a skilled technician is not such 'conduct that shocks the conscience,' * * * nor such a method of obtaining evidence that it offends a 'sense of justice,' * * *."

The court in further explaining the basis for admissibility of such evidence, stated that the blood test:

"* * * is a scientifically accurate method of detecting alcoholic content in the blood, this furnishing an exact measure upon which to base a decision as to intoxication. Modern community living requires modern scientific methods of crime detection lest the public go unprotected. The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield. * * * As against the right of an individual that his person be held inviolable, even against so slight an intrusion as is involved in applying a blood test of the kind to which millions of Americans submit as a matter of course nearly every day, must be set the interests of society in the scientific determination of intoxication, one of the great causes of the mortal hazards of the road. * * *"

The contention of denial of due process was again rejected in a more recent decision, Schmerber v. State, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, where the police subjected the defendant to a blood test without his permission. This evidence provided the basis for the defendant's conviction for driving an automobile while under the influence of intoxicating liquor. The court reaffirmed the Breithaupt case, supra, and held that where the extraction of a blood sample was made by a physician in a simple, medically acceptable manner in a hospital environment such evidence was admissible.

It appears from the record before us that the autopsy and the taking of the blood samples from the body of the deceased was done in compliance with the statutory laws of the State of Arizona. It is not disputed that the withdrawal of the blood samples was made by an authorized person in a simple, medically acceptable manner in a hospital environment.

▮ We therefore find that under the facts and conditions herein presented the results of the chemical analysis of the blood samples taken from the body of the deceased was not a denial of the claimants' constitutional rights of due process.

▮ The claimants also assert, that the evidence of the blood tests is rendered inadmissible by the terms of 63 O.S.1961, § 949, which provides, in part, that "(n)o report, findings, testimony or other information of

the State or County Medical Examiner or their assistants shall ever be admitted in evidence in any civil action in any court in this state." Although the above statute prohibits the admissibility of certain evidence in any civil action there is no language contained therein which purports to prohibit the proffered evidence in the instant proceeding.

The order of the State Industrial Court is vacated and this cause remanded for further proceedings.

All Judges concur.