**Paul MORGAN, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F-76-293.**

Court of Criminal Appeals of Oklahoma.

Oct. 25, 1976.

Rehearing Denied Nov. 15, 1976.

Clark Legate, Marietta, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Paul Morgan, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Love County, Case No. CRF–75–24, for the offense of Robbery with Firearms, in violation of 21 O.S.Supp.1973, § 801. His punishment was fixed at five (5) years' imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

The evidence adduced at trial tended to establish the following fact situation. On the morning of July 20, 1975, at approximately 2:30 a.m., defendant and Bob Liddell accompanied by two girls were drinking beer and eating at a place called Johnny's. There, the defendant met and talked with one Bratcher who testified that defendant was sober and acting normal. Upon leaving Johnny's, defendant, riding in Bob Liddell's pickup, was flagged down by the three accomplices who were riding in Bobby Kretzchsnar's pickup. It is uncontested that after stopping, the defendant was pulled from the vehicle over his objections and forced into the Kretzchsnar vehicle. The defendant then claims he was forced to drink two drugged beers over his protest, but the testimony is contradicted by his accomplices. At approximately 5:30 a.m., defendant, Bobby Kretzchsnar, Michael Liddell, and Ronnie Lempke drove to a point near the I–35 rest stop south of Marietta. The defendant and Ronnie Lempke donned bandannas and approached the automobile occupied by the Lay family. Mr. and Mrs. Marvin Lay and their two children had pulled off at the rest stop to sleep a couple of hours before driving on to Tulsa. The Lays had been vacationing and Mr. Lay had $368.00 cash in his pocket. Awakened by a tap on the window, Mr. Lay observed the defendant with a pistol in his hand, and Ronnie Lempke looking in the window. The defendant pointed the pistol at Mr. Lay and said "this is a robbery, . . ., just hand me over the billford, . . ., don't make a move other than to get your billford, or I'll kill you." Mr. Lay gave the defendant all the money he had, then defendant and Lempke returned to their vehicle. The defendant and his three co-conspirators drove to William Green's home, where they spent two or three hours drinking beer. Mr. Green then drove them all to the "Hole-in-the-Wall" lounge in Green's car. The record tends to show that the defendant operated

the cash register at the "Hole-in-the-Wall" and appeared to have control of his senses. While there, Mr. Kretzchsnar or Ronnie Lempke, handed the defendant a $100.00 bill, and the defendant said he did not want it. Upon their continued insistence, the defendant took the money and stuffed it in a hole in the couch on which he was sitting.

Marvin Wade, Deputy Sheriff, Love County, encountered the defendant at the "Hole-in-the-Wall" lounge and requested that he and his three accomplices accompany him to the Sheriff's office for questioning concerning a robbery. The defendant and Ronnie Lempke were then transported to the rest area where they were identified by Mr. and Mrs. Lay as the two men who robbed them earlier that same day. After their arrest, defendant told officers where they could recover the $100.00 bill which he had placed in the couch. Another $200.00 was recovered from Mr. Kretzchsnar. The pistol used in the robbery was recovered from under the front seat of Mr. Green's automobile and said pistol was identified as belonging to Mr. Kretzchsnar.

The defendant took the stand in his defense and conceded that he may have committed the robbery as charged but that he could not remember the events surrounding the commission of the offense. It is his testimony that he was an unwilling participant and that he had been drugged by Mr. Kretzchsnar. Much of the evidence is conflicting as to the defendant's degree of intoxication and/or whether he was high on drugs. However, Dr. Smith testified that in response to the defendant's complaint as to physical well-being after his arrest, Dr. Smith examined the defendant, and found him to be apparently normal and coherent.

▆▆▆ The defendant brings two assignments of error upon appeal. The first being that the trial court erred in permitting an attorney, not the district attorney, to question witnesses for the State to the prejudice of the defendant. The record discloses that the alleged error occurred when the State called co-defendant Kretzchsnar to the witness stand and again when co-defendant Lempke was called to the witness stand. Both co-defendants had retained Mr. Milor as their counsel. So as to insure that his clients were knowingly waiving their constitutional right against self-incrimination, Mr. Milor requested that the court permit him to voir dire both co-defendants prior to questioning. We fail to see how such a precaution would injure the defendant. The court must insure that a co-defendant in a criminal action is informed of this constitutional right and that he understands the consequences of a waiver thereof. The rule is well stated in *J. H. Rose Trucking Company v. Bell,* Okl., 426 P.2d 709 (1967):

> "The purpose of the privilege against self-incrimination is to protect any person, whether he be a witness or an accused, from being compelled to disclose information which may subject him to criminal liability."

Further, this Court has consistently held that a waiver of such right is personal to the witness claiming the privilege. See, *Castleberry v. State,* 10 Okl.Cr. 504, 139 P. 132 (1914).

▆▆ In the present case the defendant claims the court erred in permitting Mr. Milor to conduct such questioning since he was not a party to the present case. Clearly this question is within the discretion of the trial judge. Such an examination of a witness prior to giving testimony has long been held to be permissible. See, *Bauer v. People,* 67 Colo. 84, 185 P. 272 (1919). Furthermore, it is well settled that a discretionary ruling of the trial court will not be disturbed unless it can be clearly shown that the trial court's ruling was arbitrary or capricious. See, *Bourbonnais v. Box,* Okl.Cr., 371 P.2d 521 (1962).

The defendant has failed to show how the actions of the trial court has prejudiced his position in any way. Therefore, we find defendant's first assignment of error to be without merit.

██ In his second assignment of error, defendant asserts that he should have been granted a new trial in that the verdict was contrary to the law and evidence. As the basis of this motion defendant claims the evidence sufficiently shows that he was involuntarily intoxicated at the time the crime was committed and that such intoxication is a complete defense to the commission of a crime. We have carefully examined the instructions given by the court, and they are full and complete. The question of voluntary and involuntary intoxication by the use of drugs or liquor, was presented to the jury in strict conformity to the law. It therefore becomes unnecessary to discuss these instructions at length. Suffice it to say that the question of whether the defendant was so intoxicated as to render him incapable of entertaining the specific intent necessary to constitute the crime is a question of fact for the jury. See *Skeen v. State,* 61 Okl.Cr. 188, 66 P.2d 1106 (1937).

Finally, in considering the sufficiency of the evidence, the function of this Court is to ascertain whether there is sufficient evidence from which the jury could reasonably conclude that the defendant is guilty as charged. We have reviewed the record of the trial court and find there is competent evidence from which the jury could return a verdict of guilty. This Court stated in *Williams v. State,* Okl.Cr., 373 P.2d 91 (1962), that:

". . . where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts."

See also *Johnson v. State,* Okl.Cr., 451 P. 2d 391 (1969). For the foregoing reasons we find the defendant's second assignment of error to be without merit.

An examination of this record does not reveal any reversible error, and we find no reason for a modification of the judgment and sentence rendered by the trial court. Accordingly, the judgment and sentence appealed from is AFFIRMED.

BUSSEY and BLISS, JJ., concur.